THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES MARTIN, Appellant.

First Department, November 17, 1922.

Constitutional law — Highway Law, § 282-b, requiring person engaged in carrying passengers for hire in certain motor vehicles in cities of first class to file bond or policy of insurance with State Tax Commission — statute is not unconstitutional as violative of Fourteenth Amendment of Federal Constitution — classification not arbitrary and unreasonable — provision for continuing liability does not make statute invalid — statute not unconstitutional on ground that cost of furnishing bond is so great as to be confiscatory.

Section 282-b of the Highway Law, requiring every person, firm, association or corporation engaged in the business of carrying or transporting passengers for hire in any motor vehicle, except street cars, and motor vehicles operated under a franchise by a corporation subject to the Public Service Commission Law, over, upon or along any public street in a city of the first class, to deposit and file with the State Tax Commission either a personal bond with at least two sureties, a corporate surety bond or a policy of insurance in the sum of $2,500, conditioned for the payment of any judgment recovered against such person, firm, association or corporation for death or for injury to persons or property caused in the operation, or by the defective construction of such motor vehicle, and which provides that the bond or policy of insurance shall contain a provision for a continuing liability thereunder, notwithstanding any recovery thereon, is not unconstitutional on the ground that the Legislature has made a classification which is so arbitrary and unreasonable as to render the statute violative of the Fourteenth Amendment to the Federal Constitution.

The provision of the statute attaching a continuing liability to the bond or policy of insurance does not make the statute invalid on the ground that said provision is unreasonable, confiscatory or onerous, since it is conceded that surety companies are giving such bonds to comply with the law, without qualification or delay, and there is no proof that the cost of the bond is increased measurably, or in fact at all, by that requirement.

The statute is not unconstitutional on the ground that the cost of furnishing a bond is so great as to be confiscatory, for while there was testimony that certain companies charged as high as $960 a year for insurance on one automobile, there was other evidence that the highest cost for insurance is $300 a year.

Furthermore, the fact that the exercise of the police power of the State, for the passage of remedial statutes in the public interest, may entail expense upon

the owner of the property, even though it may amount to more than he thinks he can temporarily stand, does not affect the validity of the statute, and the Legislature has the right to pass proper statutes, even if compliance therewith may be expensive.

APPEAL by the defendant, Charles Martin, from a judgment of the Court of Special Sessions of the City of New York, rendered against him on the 20th day of July, 1922, convicting him of a violation of section 282-b of the Highway Law, in that he unlawfully operated a motor vehicle used in transporting passengers for hire without having filed a bond or policy of insurance with the State Tax Commission.

*Louis Tyroler* and *Samuel M. Katz* [*Robert Ferrari* of counsel], for the appellant.

*Joab H. Banton,* District Attorney [*John Caldwell Myers* of counsel], for the respondent.

*Charles D. Newton,* Attorney-General [*Robert P. Beyer,* Deputy Attorney-General, of counsel; *Edward G. Griffin* and *Claude T. Dawes,* Deputy Attorneys-General, with him on the brief, *amicus curiæ.*

DOWLING, J.:

There is no dispute whatever as to the facts in this case. On July 14, 1922, the defendant, appellant, was a public hack owner and had a public hack license. On that date the defendant was operating a taxicab in the city of New York and was engaged in carrying or transporting passengers for hire; he had a passenger in the car at the time he was arrested. The defendant had a license to drive a taxicab and had a chauffeur's license from the State to operate a motor vehicle, as well as a public hack driver's license and a public hack license, but had not filed a bond or policy of insurance with the State Tax Commission, as required by section 282-b of the Highway Law. Defendant knew before his arrest that the law required him to file with the State Tax Commission a bond or policy of insurance and had made application therefor to business men whom he knew and to various companies, and ascertained the rates charged by the latter.

The only question involved in this appeal is whether chapter 612 of the Laws of 1922 (adding to Highway Law, § 282-b) is a valid statute.

That act provides as follows:

" § 282-b. Indemnity bonds or insurance policies in cities of the first class. Every person, firm, association or corporation engaged in the business of carrying or transporting passengers for hire in any motor vehicle, except street cars, and motor vehicles operated

under a franchise by a corporation subject to the provisions of the Public Service Commission Law over, upon or along any public street in a city of the first class shall deposit and file with the State Tax Commission for each motor vehicle intended to be so operated, either a personal bond, with at least two sureties approved by the State Tax Commission, a corporate surety bond or a policy of insurance in a solvent and responsible company authorized to do business in the State, approved by the State Tax Commission, in the sum of two thousand five hundred dollars, conditioned for the payment of any judgment recovered against such person, firm, association or corporation for death or for injury to persons or property caused in the operation or the defective construction of such motor vehicle. Such bond or policy of insurance shall contain a provision for a continuing liability thereunder notwithstanding any recovery thereon. If at any time, in the judgment of the State Tax Commission, such bond or policy is not sufficient for any cause, the Commission may require the owner of such motor vehicle to replace such bond or policy with another approved by the Commission. Upon the acceptance of a bond or policy, pursuant to this section, the State Tax Commission shall issue to the owner of such motor vehicle a certificate describing such vehicle and that the owner thereof has filed a bond, or policy, as the case may be, required by this section. Either a personal or corporate surety upon a bond filed pursuant to this section or an insurance company whose policy has been so filed, may file a notice in the office of the State Tax Commission that upon the expiration of twenty days from such filing such surety will cease to be liable upon such bond, or in the case of such insurance company, that upon the expiration of such time such policy will be canceled. The State Tax Commission shall thereupon notify the owner of such motor vehicle of the filing of such notice, and unless such owner shall file a new bond or policy of an insurance company, as provided by this section, within such time as shall be specified by the State Tax Commission, such owner shall cease to operate or cause such motor vehicle to be operated, in such city, and the registration of such motor vehicle shall be automatically revoked. Any person, firm, association or corporation, operating a motor vehicle in a city of the first class, as to which a bond or policy of insurance is required by this section who or which shall operate such vehicle, or cause the same to be operated, while such a bond or policy, approved by the State Tax Commission as required by this section, is not on file with the Tax Commission, shall be guilty of a misdemeanor.

" § 2. This act shall take effect July first, nineteen hundred and twenty-two."

It is contended that the Legislature in this legislation has made a classification which is so arbitrary and unreasonable as to render the statute violative of section 1 of the Fourteenth Amendment to the Constitution of the United States. This contention is based on the claim that the act imposes a burden on the owners of taxicabs, while exempting other persons similarly circumstanced. But it cannot be assumed that the Legislature acted without information justifying the classification, and reasons will at once suggest themselves why it is desirable that the public shall be protected to the extent of being able to recover some amount of damages from the owners of such vehicles, which have been responsible for so many injuries in the public streets of New York city, and even deaths therein, as the record shows. And the claim urged by appellant that taxicab owners are unable to pay the charges for premiums on bonds shows that they must be to a large extent unable to respond to any judgments against them for damages caused by their negligence. By stipulation, proof was received " that there are operating in New York city about 325,000 automobiles other than taxicabs, and about 13,000 taxicabs; that during the year 1921, according to the figures of the Police Department of the City of New York * * *, there were killed and injured by automobiles other than taxicabs in the City of New York, 15,564 persons, being a ratio of one to twenty-two; that, according to the same figures, there were killed and injured by taxicabs within the City of New York in the year 1921, 2056 persons, being a ratio of one to six." So fraught with danger to the public is the use of automobiles that in *People* v. *Rosenheimer* (209 N. Y. 115) Chief Judge CULLEN said: " There is one ground upon which, in my opinion, the validity of the statute can be safely placed. The Legislature might prohibit altogether the use of motor vehicles upon the highways or streets of the State. It has been so held in *State of Maine* v. *Mayo* (106 Me. 62) and *Commonwealth* v. *Kingsbury* (199 Mass. 542). Doubtless the Legislature could not prevent citizens from using the highways in the ordinary manner, nor would the mere fact that the machine used for the movement of persons or things along the highway was novel justify its exclusion. But the right to use the highway by any person must be exercised in a mode consistent with the equal rights of others to use the highway. That the motor vehicle, on account of its size and weight, of its great power and of the great speed which it is capable of attaining, creates, unless managed by careful and competent operators, a most serious danger, both to other travelers on the highway and to the occupants of the vehicles themselves, is too clearly a matter of common knowledge to justify discussion. The fatalities caused by them are so numerous as to

permit the Legislature, if it deemed it wise, to wholly forbid their use. (*Otis* v. *Parker*, 187 U. S. 606; *People* v. *Persce*, 204 N. Y. 397.) If the Legislature may declare it a crime to use a motor vehicle on the highway under any circumstances, I do not see why it may not equally declare it a crime to so use such a vehicle as to injure any one in person or property. That, in effect, is a diminution, not an increase, of the criminality it had the power to attribute to the use of a motor vehicle. The provision now before us is but a still further diminution of the statutory inhibition the Legislature would be authorized to enact. It does not declare it a crime to operate an automobile on the highway or even that in its operation injury to persons or property shall be a crime, but only that failure by the operator, in case of such injury, to identify himself shall be criminal. I cannot see why the greater power does not include the less. Of course, the whole of this argument rests on the proposition that in operating a motor vehicle the operator exercises a privilege which might be denied him, and not a right, and that in a case of a privilege the Legislature may prescribe on what conditions it shall be exercised. This principle was recognized by us in the case of *Ives* v. *South Buffalo R. Co.* (201 N. Y. 271).

Furthermore, the occupation of a common carrier has at all times been recognized as subject to legislative control, and it was subject to special liabilities even at common law. Regulatory legislation of the general nature of that under consideration, in some cases still further limited to jitney busses, has been upheld in many States, the criticism upon the legislation or ordinances being strongly urged that it was discriminatory and denied the equal protection of the laws. Among these States are Arkansas (*Willis* v. *City of Fort Smith*, 121 Ark. 606); California (*Matter of Cardinal*, 170 Cal. 519); Georgia (*Hazleton* v. *City of Atlanta*, 144 Ga. 775); Iowa (*Huston* v. *City of Des Moines*, 176 Iowa, 455); Louisiana (*City of New Orleans* v. *LeBlanc*, 139 La. 113; *Lutz* v. *City of New Orleans*, 235 Fed. Rep. 978); Massachusetts (*Commonwealth* v. *Slocum*, 230 Mass. 180; *Commonwealth* v. *Theberge*, 231 id. 386); Nevada (*Ex Parte Counts*, 39 Nev. 61); New Jersey (*West* v. *City of Asbury Park*, 89 N. J. L. 402); Tennessee (*City of Memphis* v. *State ex rel. Ryals*, 133 Tenn. 83; *Nolen* v. *Riechman*, 225 Fed. Rep. 812); Texas (*Ex Parte Sullivan*, 77 Tex. Crim. Rep. 72; 178 S. W. Rep. 537; *Auto Transit Co.* v. *City of Fort Worth*, [Tex. Civ. App.] 182 S. W. Rep. 685; *Greene* v. *City of San Antonio*, [Tex. Civ. App.] 178 S. W. Rep. 6; *Ex Parte Bogle*, 78 Tex. Crim. Rep. 1; 179 S. W. Rep. 1193; *Craddock* v. *City of San Antonio*, [Tex. Civ. App.] 198 S. W. Rep. 634; *City of Dallas* v. *Gill*, [Tex. Civ. App.] 199 S. W. Rep. 1144; *Ex Parte Parr*, 82 Tex. Crim. Rep. 525; 200 S. W. Rep.

404); Washington (*State* v. *Seattle Taxicab & Transfer Co.*, 90 Wash. 416; *State* v. *Ferry Line Auto Bus Co.*, 93 id. 614; *Hadfield* v. *Lundin*, 98 id. 657); West Virginia (*Ex Parte Dickey*, 76 W. Va. 576).

In only two States have the courts declared invalid parts of ordinances regulating the operation of jitney busses. In Pennsylvania (*Jitney Bus Association of Wilkes-Barre* v. *City of Wilkes-Barre*, 256 Penn. St. 462) the Supreme Court of that State held the provisions of that ordinance were not reasonable, in so far as personal sureties upon the bond to be given were excluded, and further that the requirement that the bond required to be in the sum of $2,500 was to be " a continuing liability, notwithstanding any recovery thereon," was also unreasonable, as " no surety could properly be asked to undertake such an indefinite and unlimited responsibility." In all other respects the ordinance was upheld. This decision was followed in Florida (*State ex rel. Stephenson* v. *Dillon*, 82 Fla. 276; 89 So. Rep. 558). But in the statute under consideration provision is made for the giving of a bond with personal sureties, thus obviating the first of the criticisms made of the Wilkes-Barre ordinance. The provision for a continuing liability upon the bond is also in the New York statute. But it does not prevent surety companies, mutual or stock, from giving the bond provided for, even if it does involve a continuing liability, and there is no proof that such requirement adds in any way to the cost of the bond.

Other States which have passed regulatory statutes, requiring the giving of bond or surety in which no judicial decision has yet been given, are Connecticut, Idaho, Illinois, Iowa, New Hampshire, Oregon, Rhode Island and Wisconsin. Without going into details these statutes are cited in the addenda to the brief of the Attorney-General.

The appellant vigorously attacks the provision of the statute attaching a continuing liability to the bond. It is quite true that the meaning of this provision is that the bond or policy of insurance shall apply to the satisfaction of any number of separate judgments for personal injuries caused by the operation of the taxicab during the life of the bond or policy to the extent of not exceeding $2,500 in the case of each judgment. But otherwise a taxicab owner whose bondsman had satisfied one judgment of $2,500 for personal injuries inflicted by him could continue operating without violating the law and without giving any bond until the State Tax Commission learned of the facts and called upon him to give a new bond. Meantime, the public would be without protection. But the best answer to the claim that the continuing liability clause is unreasonable, confiscatory or onerous, is that the surety companies are concededly giving such bonds to comply with the law, without qualification or

delay, and that there is no proof that the cost of the bond is increased measurably, or in fact at all, by such requirement.

The claims of unreasonable classification and of an unjustly onerous provision for continuing liability on the bond being found to be without force, the last claim to be considered is, that the cost of furnishing the bond is so great as to be confiscatory. There is testimony that stock companies exact a premium of $960 for the required bond and that mutual companies charge $540 therefor. But there is also in evidence a schedule filed with the State Department of Insurance by the Towner Rating Bureau, a schedule of rates for corporations issuing surety bonds, showing the following rates.

" TABLE 1.— COLLATERAL AND PREMIUMS.

" Schedule for individual cars; and owners operating one to nineteen taxicabs.

| Initial collateral deposit per car | Surety carries | Monthly premium per car |
|---|---|---|
| $2,500 | $    0 | $5 00 |
| 2,000 | 500 | 10 00 |
| 1,500 | 1,000 | 12 50 |
| 1,000 | 1,500 | 15 00 |
| 750 | 1,750 | 17 50 |
| 500 | 2,000 | 20 00 |
| 250* | 2,250 | 22 50 |
| 0 | 2,500 | 25 00 plus $20 per month regarded as collateral. Total $45 per month" |

Thus a taxicab owner under the law can (1) give a personal bond with two sureties to be approved by the State Tax Commission; (2) deposit with a surety company collateral which will reduce his premium to as low as $5 per month, or $60 annually; (3) if he can deposit no collateral, he still pays only $300 a year for premiums, the additional $240 out of the $540 testified to being regarded as collateral to secure his bond.

The fact that the exercise of the police power of the State, or the passage of remedial statutes in the public interest, may entail expense upon the owner of property, even though it may amount to more than he thinks he can temporarily stand, still is no answer to the validity of the law. The question was sharply presented in the Tenement House cases (*Health Department* v. *Rector, etc.*, 145

" * On fleets of 10 or more this rate applies to minimum collateral of $2,500 for fleet; less than ten, $250 per car."

N. Y. 32; *Tenement House Department* v. *Moeschen*, 179 id. 325; affd., 203 U. S. 583), and the right to pass proper statutes upheld, even if compliance therewith be expensive.

The Legislature has not seen fit to prohibit the operation of taxicabs entirely. It has sought to regulate their use and make such use a source of less damage to the public. The provisions of the act are reasonable and justified. The cost of complying with it is not confiscatory. The act is within the proper exercise of legislative power and should be held valid.

The judgment appealed from should, therefore, be affirmed.

Clarke, P. J., Page, Merrell and Finch, JJ., concur.

Judgment affirmed.