MAX WEKSLER, Appellant, *vs.* MORGAN G. COLLINS *et al.* Appellees.

*Opinion filed April 24, 1925—Rehearing denied June 5, 1925.*

1. CONSTITUTIONAL LAW—*when laws for protection and safety do not violate fourteenth amendment.* The equality clause of the fourteenth amendment does not deprive a State of its power to pass laws for the protection of the public health, safety and morals and the promotion of the general welfare, and such laws are valid when they apply equally and uniformly to all persons similarly situated or when their classifications are reasonable or have a substantial relation to the purpose of the laws.

2. SAME—*when a statute may apply to one particular city.* A statute which applies to one city, only, does not deny the equal protection of the laws where it is based on some real distinction between that city and the other territory of the State.

3. SAME—*State and its municipal corporations may regulate use of streets—motor vehicles.* The State, and its municipal corporations under their delegated powers, may regulate the use of streets and highways where no merely arbitrary discriminations are made, and such regulation may prohibit or prescribe conditions for the operation of motor or other vehicles for purposes of gain.

4. SAME—*what occupation or business may be regulated by law.* An occupation or business which may be carried on by permission will justify a degree of regulation not admissible in the case of an activity pursued as a matter of right.

5. SAME—*broad discretion is allowed in legislative classification for public safety.* The legislature is vested with a broad discretion in making classifications in the interest of the public safety, and the question of classification is primarily legislative and only becomes judicial when legislative action is clearly unreasonable.

6. SAME—*provision of the Motor Vehicle law regulating use of taxicabs is valid.* Section 42a of the Motor Vehicle law, (Laws of 1923, p. 543,) regulating the use of taxicabs in cities of 100,000 or more inhabitants, does not make an arbitrary classification but is based upon a rational difference of situation or condition and does not violate the equality clause of the fourteenth amendment to the Federal constitution.

7. SAME—*statute must be shown to be unreasonable as applied to party raising the objection.* One who asserts that a statute is unreasonable or oppressive must show affirmatively that as applied to him it is so.

8. SAME—*statutory provision requiring the insurance of taxicab owners does not violate due process of law.* The provision of section 42a of the Motor Vehicle law requiring the owners of motor vehicles operated in large cities for the carriage of passengers for hire to secure a bond or liability insurance to secure the payment of judgments for personal injuries does not amount to confiscation and does not result in the taking of the motor vehicle owners' property without due process of law.

9. SAME—*constitutional provision against special laws does not include motor vehicles.* Laws regulating the operation of motor vehicles for hire are not enumerated in section 22 of article 4 of the constitution, prohibiting the granting to any corporation, association or individual of any special or exclusive privilege, immunity or franchise, and such laws are not included in the prohibition against passing local or special laws.

10. SAME—*what determines reasonableness of police regulation.* The measure of the reasonableness of a police regulation is not necessarily what is best but what is fairly appropriate to the purpose of the act under all circumstances.

11. SAME—*requiring indemnity against personal injuries by taxicabs is a valid exercise of police power.* The provision of section 42a of the Motor Vehicle law requiring a bond or insurance of owners of motor vehicles operated for the carriage of passengers for hire in large cities to secure the payment of damages is a valid exercise of the police power, and the legislature may specify the kinds as well as the amount of security furnished.

12. SAME—*giving the Secretary of State the right to determine sufficiency of bonds is not delegation of legislative power.* Legis-

lative power cannot be delegated to judicial or administrative officers, but the power to determine the sufficiency of bonds is a ministerial power, and the provision of section 42*a* of the Motor Vehicle law authorizing the Secretary of State to pass upon the sufficiency of the bond or insurance policy required by the act to be furnished by the owners of taxicabs does not delegate legislative power.

13. MOTOR VEHICLES—*provision of section 42a of the Motor Vehicle law making bond required therein a lien on real estate is invalid.* That part of sub-section 1 of section 42*a* of the Motor Vehicle law which provides that the personal surety bond of the owner of a taxicab shall be a lien on the real estate scheduled in the bond, without making any provision for the discharge of the lien, is an arbitrary discrimination in making it impossible to obtain personal sureties and is void, but the rest of the act is complete in itself and not affected by registering the void provision.

14. STATUTES—*when invalid provision does not affect the remainder of act.* The fact that a part of an act is invalid does not require that the rest shall be held void unless all the provisions are so connected as to depend upon each other, and if, when the invalid portion is stricken, that which remains is complete in itself and capable of being executed it must be sustained.

HEARD, J., specially concurring.

THOMPSON, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

SLOTTOW & LEVITON, (CHARLES LEVITON, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, GEORGE E. DIERSSEN, and EDWARD E. WILSON, of counsel,) for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Max Weksler, a resident of the city of Chicago and engaged in operating a taxicab for hire, filed his bill of complaint in the superior court of Cook county against Morgan G. Collins, superintendent of police of the city of

Chicago, William E. Dever, mayor of that city, Robert E. Crowe, State's attorney of Cook county, Edward J. Brundage, Attorney General, and Louis L. Emmerson, Secretary of State, to enjoin them from enforcing sections 42*a*, 42*b*, 42*c* and 42*d* of the Motor Vehicle law approved June 21, 1923. (Laws of 1923, p. 542.) Demurrers to the bill were filed by the superintendent of police, the mayor, the Attorney General and the Secretary of State. The State's attorney filed an appearance but did not demur to or answer the bill. A temporary injunction was issued. Thereafter, upon leave granted, complainant added an allegation to his bill that he also filed it on behalf of two hundred members of the Independent Taxi Owners' Association, and the demurrers were ordered to stand to the bill as amended. Upon a hearing the several demurrers were sustained and the bill as amended was dismissed for want of equity at complainant's costs. He prosecutes this appeal on the ground that the validity of the act in question is involved.

Section 42*a* (Laws of 1923, p. 543,) makes it unlawful for any person, firm or corporation to operate any motor vehicle upon any public street in any city of 100,000 or more inhabitants for the carriage of passengers for hire, indiscriminatingly accepting and discharging all such persons as may offer themselves for transportation, unless there is on file with the Secretary of State while such motor vehicle is operated, either

(1) A bond of its owner with a responsible surety company authorized to do business in this State as surety, or a bond of such owner with one or more personal sureties owning real estate in this State of the value of $5000 above all encumbrances, accompanied by affidavits of such sureties stating, among other things, the location, legal description, market value, nature and amount, with encumbrances, if any. Either bond is required to be in the sum of $2500 for each motor vehicle so operated, and shall be conditioned that the owner of the vehicle will pay all final judgments

recovered against him for any injury to or death of any
person resulting from the negligence of the owner or his
agent in the operation of the vehicle, and shall by its terms
inure to the benefit of the person recovering any such judg-
ment, and provide that he may sue thereon, "and such bond,
for the full amount thereof shall, by its terms, be a lien
for the benefit of the beneficiaries of said bond on such
real estate so scheduled, and shall be recorded in the office
of the recorder of deeds in each county in which such real
estate is located." Any surety may withdraw from such
bond by serving ten days' written notice upon the owner
and the Secretary of State, either personally or by registered
mail, in which event the owner shall file another bond or
insurance policy as required by the act. Upon the expira-
tion of the ten-day period the Secretary of State shall mark
the bond "withdrawn," with the date the withdrawal be-
came effective, and the liability of the sureties thereon, so
far as any injury or damage sustained thereafter is con-
cerned, shall cease. If at any time for any good cause, in
the judgment of the Secretary of State, the bond is insuf-
ficient he may require the owner to replace it with another
or with an insurance policy, as provided by the act, and
upon such substitution the liability of the sureties on the
prior bond as to any subsequent injury or damage shall
terminate; or

(2) A policy of insurance in a responsible company
authorized to do business in this State, insuring the owner
of the motor vehicle against liability for any injury to or
death of any person resulting from the negligence of such
owner or his agent in the operation of the vehicle. The
policy shall insure the owner for $2500 for each motor
vehicle covered, but where it includes more than one vehicle
the liability thereon may be limited to a maximum of $2500
for each vehicle. The policy shall provide for payment of
any final judgment rendered against the owner of such
vehicle for such injury or death and that suit may be

brought thereon by the owner of any such judgment. The policy shall contain a description of each vehicle, giving the manufacturer's name and number and State license number. If at any time the policy be canceled by the issuing company or its authority to do business in this State be revoked, the Secretary of State shall require the owner either to furnish a bond or to replace the policy with another in accordance with the act. The policy shall also contain a provision that it cannot be canceled by the issuing company without giving ten days' notice, in writing, of such cancellation to the owner and Secretary of State, either personally or by registered mail. The provisions with reference to requiring a bond or a new policy in the event of the cancellation of an existing policy, the termination of liability upon the cancellation of that policy so far as subsequent injury and damage are concerned, and the power of the Secretary of State if in his judgment, for any good cause, the existing insurance policy is insufficient, to require the owner of the vehicle to substitute a bond or another insurance policy, and the effect of such substitution, are the same as the provisions in sub-section 1 concerning the withdrawal of sureties from bonds and the power of the Secretary of State with reference to an insufficient bond.

Section 42b provides for the filing with the Secretary of State of an application for his approval of the bond or insurance policy tendered under the provisions of the act, and if the Secretary of State shall determine that such bond or policy complies with the act he shall accept the bond or policy and issue to the applicant a certificate stating that he has, in respect to the vehicle described therein, complied with the provisions of the act.

Section 42c provides that if any bond or policy so filed shall for any reason become inoperative it shall be unlawful to operate such motor vehicle until a bond or insurance policy complying with the act shall have been filed with the Secretary of State.

By section 42*d* any violation of any provision of the three preceding sections, or any failure to comply with any order of the Secretary of State, is made a misdemeanor and punishable by a fine of not less than $100 nor more than $500, or by imprisonment in the county jail for not less than ten days nor more than one year, or by both such fine and imprisonment.

Appellant's first contention is that the act contravenes the equal protection and due process clauses of the fourteenth amendment to the Federal constitution and section 2 of article 2 of the State constitution, that no person shall be deprived of life, liberty or property without due process of law. The equality clause of the fourteenth amendment does not deprive a State of its power to pass laws for the protection of the public health, safety and morals and the promotion of the general welfare. The General Assembly has a wide discretion in the enactment of such laws, and in pursuance of objects within the scope of its powers may enact laws of limited or particular application so far as persons and property affected are concerned. Such a statute is valid when it applies equally and uniformly to all persons similarly situated, but it is in contravention of the equality clause where the classification or discrimination made by it is unreasonable or has no substantial relation to the object of the act. A statute which applies to one city, only, does not deny the equal protection of the laws where it is based on some real distinction between the particular city and the other territory of the State. (*New York Tenement House Department* v. *Moeschen,* 179 N. Y. 325; *Moeschen* v. *New York Tenement House Department,* 203 U. S. 583.) The State, and its municipal corporations under their delegated powers, may regulate the use of streets and highways where no merely arbitrary discriminations are made. The density and continuity of traffic upon the streets of large cities justify measures to safeguard the public from the peculiar and additional dangers which arise out of the operation of mo-

tor vehicles in such cities. Streets are primarily devoted to use by the public in the ordinary way. The State may determine that such use of streets shall be preferred over their use by carriers for hire. The operation of vehicles in streets for purposes of gain is extraordinary and generally may be prohibited, or may be permitted upon such conditions as the legislature may prescribe. The power to exclude includes, for the most part, the power to permit upon conditions. An occupation or business which may be carried on by permission will justify a degree of regulation not admissible in the case of an activity pursued as a matter of right. *Davis* v. *Massachusetts,* 167 U. S. 43; *Packard* v. *Banton,* 264 id. 140.

But it is asserted that the act under review is arbitrarily discriminatory because it singles out taxicabs, and the classification is not based upon any substantial difference, either in construction or operation, from the vast majority of other motor vehicles. Taxicabs are operated for gain, and hence are in service during longer periods of the day and night over all streets, and usually at higher rates of speed than motor vehicles devoted solely to private pursuits, whether of business or pleasure. Motor trucks are operated principally in daylight, over fewer streets and at lower speeds than taxicabs. The presence of taxicabs in the congested streets of large cities increases the probability of accidents and consequently of personal injuries. The legislature is vested with a broad discretion in making classifications in the interest of the public safety. The question of classification is primarily legislative and only becomes judicial when the legislative action is clearly unreasonable. (*Heartt* v. *Village of Downers Grove,* 278 Ill. 92; Cooley's Const. Lim.—7th ed.—p. 236.) Statutes similar in character to the one in question here have been enacted in a number of States, and, except in certain instances as to particular provisions found to be arbitrary or unreasonable, have been sustained as a proper exercise of the police power.

(*Willis* v. *City of Fort Smith,* 121 Ark. 606; *In re Cardinal,* 170 Cal. 519; *Hazleton* v. *City of Atlanta,* 144 Ga. 775; *Huston* v. *City of DesMoines,* 176 Iowa, 455; *City of New Orleans* v. *LeBlanc,* 139 La. 113; *Commonwealth* v. *Slocum,* 230 Mass. 180; *Melconian* v. *City of Grand Rapids,* 218 Mich. 397; *West* v. *City of Asbury Park,* 89 N. J. L. 402; *People* v. *Martin,* 197 N. Y. Supp. 28; *Donella* v. *Enright,* 195 id. 217; *Jitney Bus Association of Wilkes-Barre* v. *City of Wilkes-Barre,* 256 Pa. 462; *State* v. *Dillon,* (Fla.) 89 So. 558; *Ex parte Sullivan,* (Texas) 178 S. W. 537; *City of Memphis* v. *State,* 133 Tenn. 83; *State* v. *Seattle Taxicab Co.* 90 Wash. 416; *Ex parte Dickey,* 76 W. Va. 576.) The classification made by the act under review is not arbitrary but is based upon a rational difference of situation or condition and does not violate the equality clause of the fourteenth amendment.

In support of the contention that the act deprives appellant of his property without due process of law, it is argued that its requirements are so oppressive as to amount to confiscation. The owner of a motor vehicle who transports passengers for hire in the manner and upon the streets of a city as defined in the act may file with the Secretary of State an insurance policy or a bond, either with a corporate or individual surety. These forms of indemnity are usually most readily given, and the act permits the owner of the vehicle to make his election. One who asserts that a statute is unreasonable or oppressive must show affirmatively that as applied to him it is so. (*Biffer* v. *City of Chicago,* 278 Ill. 562; *People* v. *Village of Oak Park,* 266 id. 365; *Huston* v. *City of DesMoines, supra.*) While appellant alleges that he cannot obtain a personal surety bond because the act makes such a bond a lien upon the real property scheduled, yet he does not charge that he is unable to obtain a corporate surety bond or an insurance policy at reasonable expense. In *Packard* v. *Banton, supra,* the Supreme Court of the United States, in reviewing a statute

of the State of New York similar to the one here involved and requiring the same indemnity, held that it was not so burdensome in respect of the cost of insurance premiums as to amount to confiscation and that it did not result in the deprivation of the motor vehicle owner's property without due process of law. The contention that the act in question violates the due process provisions of the Federal and State constitutions cannot be sustained.

Appellant further contends that the act is in conflict with section 22 of article 4 of the constitution, which prohibits the granting to any corporation, association or individual of any special or exclusive privilege, immunity or franchise whatever. The act grants no special or exclusive privilege, immunity or franchise to anyone. Laws regulating the operation of vehicles for hire are not enumerated in that section of the constitution and are not included in its prohibition against passing local or special laws. The act is not, therefore, subject to the objection urged. *Maulding* v. *Skillet Fork Drainage District,* 313 Ill. 216; *Wilson* v. *Board of Trustees,* 133 id. 443; *Owners of Lands* v. *People,* 113 id. 296; *People* v. *Bowman,* 247 id. 276.

It is also asserted that the act is an unwarranted extension of the police power of the State, and unreasonable, because it insures the collection of judgments recovered for personal injuries. The condition of the bond or policy is, that the owner of the motor vehicle pay all final judgments rendered against him for any injury or death resulting from the negligence of himself or his agent in the operation of the vehicle. If he pays such judgments there can be no recovery on the bond or policy. The requirement of a bond with a personal or corporate surety, or an insurance policy, is a provision for the protection of the public. The owner of the motor vehicle is not restricted in his choice, for he may elect which of these forms of security he will give. The measure of the reasonableness of a police reglation is not necessarily what is best, but what is fairly appropri-

ate to the purpose of the act under all circumstances. (*Sligh* v. *Kirkwood,* 237 U. S. 52; Cooley's Const. Lim.— 7th ed.—p. 236.) The right to require indemnity for the payment of valid claims for personal injuries, as explicit and extensive as that here required, has been recognized as reasonably incidental to the exercise of the police power of the State or municipality. (*Nolen* v. *Riechman,* 225 Fed. 812; *Willis* v. *City of Fort Smith, supra.*) If in the conduct of a business upon the streets of a city for hire the public is endangered, there is not only the right but also the duty of regulating it, and such regulation may properly include the requirement of a bond to secure the payment of damages. (*Packard* v. *Banton, supra; People* v. *Martin, supra; In re Cardinal, supra; Commonwealth* v. *Slocum, supra; Huston* v. *City of DesMoines, supra; Melconian* v. *City of Grand Rapids, supra; State* v. *Seattle Taxicab Co. supra.*) The act is not an unwarranted extension of the police power, as charged.

Another of appellant's contentions is, that the act is arbitrarily discriminatory and unreasonable because it does not provide for the deposit of money or public securities as an alternative for the required bond or policy of insurance. The legislature has the power to specify the kinds as well as the amount of security which shall be furnished by the person who seeks to transport passengers for hire by a motor vehicle on the streets of a city, and if its requirements are not unreasonable they will be sustained. (*In re Cardinal, supra.*) Statutes require the execution of bonds in various judicial proceedings without providing that money or securities may be deposited in lieu of such bonds, yet such statutes have not been held for that reason to be arbitrary or discriminatory. Ordinarily a bond or insurance policy, as prescribed by the act in question, can be given with greater facility and by many more persons than are able to deposit money or securities of a value equal to the indemnity required. The legislature in the enactment of

the statute considered the usual or ordinary situation, and the act is not, in the respect claimed, either arbitrary or unreasonable.

Appellant asserts that the act makes the sureties upon the bond liable for injuries which may result from the operation of the taxicab solely for private purposes and not for hire, and that the act is for that reason unreasonable and arbitrarily discriminatory. Section 42*a* limits the provisions of the act to a motor vehicle operated upon any public street of a city of the requisite population for the transportation of passengers for hire. Sub-section 1 of the same section provides that the bond shall be in the sum of $2500 "for each such motor vehicle so operated." Nothing in the act makes it unlawful for the owner of a motor vehicle to operate it for his private purposes without giving a bond or insurance policy. One or the other, only, is required when he operates his car for the purpose mentioned in the act, and only when injury to or death of any person results from the negligence of the owner or his agent in such operation can any liability upon the bond or policy arise.

Appellant also contends that the power granted to the Secretary of State to require a new bond or insurance policy if in his judgment, for any good cause, the existing bond or policy is insufficient, is arbitrary and provides no standard or reasonable guide for his direction. The act fixes the sum and prescribes the conditions of the bond or insurance policy, whichever the owner of the motor vehicle elects to give. These essentials were determined by the law-making power and were not left to the discretion of any administrative or ministerial officer. But the General Assembly could not, in the nature of things, pass upon the qualifications of the sureties upon bonds or the responsibility of insurance companies issuing policies tendered in compliance with the act. Bonds or policies once sufficient might by the lapse of time for various reasons become insufficient. The determination of these questions is an administrative

function and must necessarily be left to an administrative officer. All public officers exercise some discretion in the discharge of their duties. The power to determine the sufficiency of bonds has always been recognized in this State as a ministerial power. (*Milstead* v. *Boone,* 301 Ill. 213; *Hawthorn* v. *People,* 109 id. 302.) Legislative power can not be delegated to judicial or administrative officers, (*Sheldon* v. *Hoyne,* 261 Ill. 222,) but the administrative function of passing upon the sufficiency of a particular bond or insurance policy is by the act properly vested in the Secretary of State, and when in the performance of that duty he exercises a discretion he does not perform or interfere with any legislative function.

Appellant further contends that the act is arbitrarily discriminatory and unreasonable because it makes the personal surety bond a lien upon the real estate scheduled without any provision for the discharge of the lien, which in the case of accrued liability to infants or incompetents may continue indefinitely, and that in consequence it is practically impossible to obtain personal sureties. Section 42a of the act, with reference to the bond, provides, "and such bond, for the full amount thereof shall, by its terms, be a lien for the benefit of the beneficiaries of said bond on such real estate so scheduled, and shall be recorded in the office of the recorder of deeds in each county in which such real estate is located." While a surety may withdraw from such a bond by serving the written notice prescribed by the act, yet any liability which accrued prior to the time of such withdrawal is not thereby released. The liability may have accrued in favor of an infant or incompetent person whose incapacity may arrest the running of the Statute of Limitations for many years. Meanwhile no method is provided by which the real property scheduled can be discharged from the lien. The effect of this provision not only makes the title to such real estate unmarketable for an indefinite period, but it makes it extremely difficult, if not impossible,

for the owner of a motor vehicle to obtain personal sureties upon the bond required by the act. The bonds given by executors, administrators, guardians, conservators and others acting in a fiduciary capacity need not be recorded, nor are they made liens upon the real property owned by the sureties, yet the principals in such bonds often have possession of large sums of money and securities of considerable value. Prior to July 1, 1917, recognizances taken in criminal cases were not made liens upon the sureties' property. By an enactment then effective, (Laws of 1917, p. 339,) such a recognizance became a lien upon the scheduled property, but it was expressly provided that the lien should cease immediately upon final disposition of the case, the surrender of the defendant to the proper authorities, or the entry of an order striking the case from the docket, with leave to the State's attorney to re-instate. The provision remained in effect only two years, for on July 1, 1919, a subsequent amendment came into force (Laws of 1919, p. 421,) which restored the statute as it stood prior to July 1, 1917, and terminated the lien of every such recognizance except in cases where they had been reduced to judgment. The liability upon such recognizances was definite, usually for short periods, only, and the lien could be easily discharged, yet at the next session succeeding its enactment the General Assembly repealed the provision which made recognizances liens upon the real estate scheduled. If bonds and recognizances of the kinds mentioned, and upon which there is often an actual and not merely a potential liability, are not made liens upon the real property of the sureties, it is difficult to discern upon what rational basis the personal surety bond, under the act in question, is made such a lien. No reason is perceived why that bond should be set apart from other bonds upon which the surety's undertaking may involve him in much greater financial losses. The inducement to convey the scheduled property is certainly not peculiar to the surety upon the taxicab own-

er's bond. That part of sub-section 1 of section 42*a* of the act under review which reads, "and such bond, for the full amount thereof shall, by its terms, be a lien for the benefit of the beneficiaries of said bond on such real estate so scheduled, and shall be recorded in the office of the recorder of deeds in each county in which such real estate is located," is an arbitrary discrimination and unreasonable and is therefore void.

There remains for determination the question whether the invalidity of the provision for recording the personal surety bond and making it a lien necessitates the destruction of the entire act. The fact that a part of an act is unconstitutional does not require that the remainder shall be held void unless all the provisions are so connected as to depend upon each other. The valid and invalid provisions may even be contained in the same sentence and yet be perfectly distinct and separable, so that the former may stand though the latter fall. If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed wholly independently of that which is rejected, it must be sustained. (*People* v. *Long,* 297 Ill. 194; *Shellabarger Elevator Co.* v. *Illinois Central Railroad Co.* 278 id. 333; *People* v. *O'Brien,* 273 id. 485; *People* v. *Knopf,* 183 id. 410.) We cannot presume that the General Assembly would not have enacted the statute or the provision permitting a personal surety bond to be given without the further provision for its recording and making it a lien. The two provisions are separate and distinct from and not dependent upon each other. A personal surety bond under the act may be given and made effective without any regard to the provision concerning its recording and lien. That provision is void and must be rejected, but the rest of the act is complete in itself and must be sustained.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

Mr. JUSTICE HEARD, specially concurring:

While I concur in the affirmance of the decree, I do not agree with that portion of the opinion which holds that that part of sub-section 1 of section 42*a* of the act under review which reads, "and such bond, for the full amount thereof shall, by its terms, be a lien for the benefit of the beneficiaries of said bond on such real estate so scheduled, and shall be recorded in the office of the recorder of deeds in each county in which such real estate is located," is an arbitrary discrimination and unreasonable and is therefore void. In my opinion the reasons assigned for such holding are reasons which might properly be urged upon the legislature rather than the court.

Mr. JUSTICE THOMPSON, dissenting.