(No. 24718.—

FRED R. BRYAN, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed February 15, 1939—Rehearing denied April 5, 1939.*

BARNET HODES, Corporation Counsel, (L. LOUIS KARTON, ALEXANDER J. RESA, and J. HERZL SEGAL, of counsel,) for appellant.

GEORGE PFIRSHING, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

On March 8, 1934, appellee, Fred R. Bryan, was struck by a fire truck operated by the fire department of the city

of Chicago and severely injured. He brought suit against the city of Chicago under the act of July 7, 1931, (Ill. Rev. Stat. 1937, chap. 70, par. 9,) which authorizes recovery against a city for the negligent operation of a municipal fire department. The trial resulted in a verdict in favor of appellee for $8500 upon which judgment was entered. The city of Chicago has appealed directly to this court alleging the statute involved is unconstitutional, and that appellee was guilty of contributory negligence as a matter of law.

The statute under which the suit was brought is as follows: "Section 1. In case any injury to the person or property of another is caused by the negligent operation of a motor vehicle by a member of a municipal fire department while such member is engaged in the performance of his duties as fireman, and without the contributory negligence of such injured person or the owner of such property or the agent or servant of such injured person or owner, the municipality in whose behalf such member of such fire department is performing such duties shall be liable for such injury; provided, that in no case shall a member of a municipal fire department be liable in damages for any injury to the person or property of another caused by him while operating a motor vehicle while engaged in the performance of his duties as fireman."

It is claimed the act in question is repugnant to section 22 of article 4 of the constitution of Illinois, in that it grants to a person injured by a fire department vehicle a cause of action not enjoyed by one injured by a vehicle used by a city in performing other governmental functions. This proposition seems to imply that in order to deprive a municipality of exemption from the liability it has heretofore enjoyed in the performance of governmental functions such act must apply to the operation of all vehicles in all departments of the city, and not be limited to those of the fire department.

Whether a law is general, local or special does not depend upon the number of things within the scope of its operation. To be general it is not necessary that an act operate in every place or upon every person in the State, but if every place or person brought within the relations or circumstances provided for is affected by the law, the act is general. (*Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504; *People* v. *City of Chicago,* 349 id. 304; *Mathews* v. *City of Chicago,* 342 id. 120.) Classifications of persons or objects of legislative regulation are not open to constitutional objection if they be not arbitrary, but are based upon some substantial difference bearing proper relation to the classification. (*Leuth* v. *Goodknecht,* 345 Ill. 197.) It is well known that vehicles used by municipalities in extinguishing fires carry hose, pumps, ladders and other equipment; that they are large and heavy, occupy more space of the street in traveling, and usually consist of several units, one following the other, and go to their destination with as much speed as the emergency may require. It is manifest there may be more danger to life and property in the operation of such vehicles than of the ordinary automobiles or trucks of other departments of the city. These considerations furnish a reasonable basis for making a law applicable to operating fire department vehicles without including those of other departments of a municipality.

We entertain no doubt as to the right of the General Assembly to enact such a law. The powers, duties and liabilities of municipal corporations, unless restrained by constitutional limitations, are wholly under the control of the General Assembly. (*People* v. *Board of County Comrs.* 355 Ill. 244.) The power even extends to the right to abolish municipal corporations, with or without the consent of the people in the locality affected. (*People* v. *Kelly,* 357 Ill. 408; *Wilson* v. *Board of Trustees,* 133 id. 443.) Cities and kindred municipalities have no inherent powers, and any powers or rights granted by the legislature may be

·modified or withdrawn at once. *City of Geneseo* v. *Illinois Northern Utilities Co.* 363 Ill. 89.

At the time the statute enabling cities to voluntarily organize was enacted, the legislature could have made them liable for any negligent operation of its vehicles, and we see no reason why it cannot do so now without violating the constitution. It was plainly intimated in *Roumbos* v. *City of Chicago,* 332 Ill. 70, that cities could, by statute, be made liable for injuries so caused, and other States have held valid similar legislation as to cities and municipalities exercising governmental functions. *Lossman* v. *City of Stockton,* 44 Pac. (2d) 397; *Schumacher* v. *City of Milwaukee,* 243 N. W. 756; *Creps* v. *City of Columbia,* 104 S. C. 371, 89 S. E. 316;_ *Cashin* v. *State Highway Com.* 136 Kan. 659, 17 Pac. (2d) 838; *Groff* v. *City of McKeesport,* 175 Atl. 426; *Miller* v. *City of New York,* 257 N. Y. S. 33.

It is next urged that the proviso contained in the act exempting a member of the municipal fire department from liability for damages for an injury caused to the person or property of another, while engaged in the performance of his duties, grants to firemen a special immunity not enjoyed by other persons similarly situated. This part of the statute is clearly severable from the part affecting the city. When an act containing valid provisions is complete and capable of being executed by itself, but also contains illegal provisions, the valid and severable portion will be enforced even though the other parts may be contrary to the constitution. (*Weksler* v. *Collins,* 317 Ill. 132; *People* v. *Long,* 297 id. 194; *Shellabarger Elevator Co.* v. *Illinois Central Railroad Co.* 278 id. 333; *People* v. *O'Brien,* 273 id. 485.) The liability of the fireman to the plaintiff or to the city is not involved in this suit, and in view of the foregoing authorities it is not necessary to consider the validity of the proviso.

The accident occurred at the intersection of Ashland avenue, a north and south street, and Thirty-eighth street, in the city of Chicago, a few minutes before 6:00 A. M. Plaintiff was crossing Ashland avenue from the west on the south cross walk and intended to take a north-bound street car on Ashland avenue. There was not much travel at that hour. He states he hesitated on the west curb for traffic to clear, and then proceeded at a fast walk across the street, and that he saw a street car midway between Thirty-ninth and Thirty-eighth streets coming north, which he hailed. He says he did not hear a siren or bell of the fire truck, and did not see any vehicle coming from the south, and he then looked north and proceeded across the street; that he paused in the center of the north-bound track about ten or fifteen feet in front of the street car, which had stopped south of the cross walk, to see if anything was coming, and that he neither heard nor saw anything, and stepped in front. of the street car and was hit by the fire truck; that he is not hard of hearing, and has good sight, and that the visibility was such he could see a couple of blocks down the street. The evidence shows the street car had stopped and it is claimed he could have seen the fire truck from a place of safety had he looked. There is no testimony the fire truck swerved in front of the car, but on the contrary was about three feet to the east when it passed.

The eye-witnesses to the accident were the motorman on the street car and the driver of the fire truck, both of whom testified the plaintiff ran out from in front of the street car and was either struck by or ran into the side of the fire truck. There is the testimony of five firemen that the siren was being sounded almost constantly from the time the truck left the station some blocks away and that it made a noise that could be heard for a considerable distance. The motorman of the car testified he heard the

siren, and the evidence shows the conductor gave the signal for the street car to slow down or to stop, as is required by the company rules, when fire trucks are passing them on the street. Four of the plaintiff's witnesses, who were passengers on the street car, say they did not hear the siren nor the warning signal from the truck. The plaintiff says he did not hear any noise or any combination sound of rumbling and whistling. A mail carrier says he was reading and did not hear the siren blown, but admits that he can account for this by intense concentration of mind; that it could have passed along the side of the street car and he would not have known it. Witness Shannon testified he was in the street car and that no siren was sounded, but on cross-examination said he heard the rumble of the fire truck. Witness Erickson says he did not hear the siren of the fire truck. This is the extent of the testimony that no signal was given.

The statute in this case requires proof of negligence in the operation of the fire vehicle, and also an absence of contributory negligence. We do not think the evidence in this case shows an absence of contributory negligence, or, if the negative statements can be construed as evidence, there is no testimony that plaintiff made any effort to look for vehicles before he stepped from in front of the standing street car in the path of the fire truck. Appellee excuses not looking before stepping from in front of the street car, because he was fearful the car might start, but this does not explain his failure to hear the fire truck.

Under the law in force at the time this accident happened the statute provided that "in all cases police vehicles, fire departments and vehicles transporting United States mail" shall have the "right-of-way over other vehicles," (Cahill's Stat. 1933, chap. 95(a), par. 34,) which act should be taken into consideration in determining the question of negligence in the operation of vehicles, or contributory negligence upon the part of persons bound to know or take

notice thereof. There is no doubt the fire truck passed the street car just as the plaintiff came from in front, but if he had looked could have seen, or if he had listened could have heard it. Similar action was held contributory negligence as a matter of law in *Provenzano* v. *Illinois Central Railroad Co.* 357 Ill. 192. To that effect is *Jones* v. *Florios*, 248 Mich. 153, 226 N. W. 852; *Letts* v. *Cole*, 310 Pa. 509, 165 Atl. 847; *DiStephano* v. *Smith*, 102 Atl. (R. I.) 817.

The mere failure to sound the siren, in itself, could not authorize a recovery under the statute, unless the plaintiff was free from contributory negligence. The plaintiff had a clear view down the street; the fire truck was a large vehicle; he was crossing a street that had other traffic on it, and was bound to know there might be moving vehicles in the east lane of the street for which he should have been on the lookout before exposing himself to them. The extinguishment of fires is an important function of a city, and everyone knows that as much haste as can be made is necessary to preserve the property, and perhaps the lives, of other citizens. These circumstances, as well as the type of vehicles used for such purpose, and the fact they are accorded a right-of-way over other vehicles, makes it the duty of other persons, whether walking or riding, to be on the lookout for their approach. It is evident the fire truck was in the block at the same time as the street car, and could have been seen by appellee before he placed himself in front of the street car. If he did not look, or did not see when he did look, his failure or inability cannot be charged to appellant.

Under the facts disclosed in the record appellee was guilty of contributory negligence, as a matter of law, preventing a recovery.

The judgment of the superior court of Cook county is reversed.

*Judgment reversed.*