## James T. Groot, Appellee, v. City of Chicago, Appellant.

## Gen. No. 42,083.

Heard in the second division of this court for the first district át the February term, 1942. Opinion filed February 10, 1944.

Barnet Hodes, Corporation Counsel, for appellant; James A. Velde and Adam E. Patterson, Assistant Corporation Counsel, of counsel.

Gardner, Carton & Douglas and Erwin W. Roemer, all of Chicago, for appellee; Charles T. Shanner and William L. Fay, both of Chicago, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

An action to recover damages for personal injuries sustained by plaintiff in a collision between the automobile he was driving and a fire department truck of the City of Chicago. A jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $4,500. Defendant appeals from a judgment entered upon the verdict.

This was the second trial of the case. Upon the first trial a jury found defendant guilty and assessed plaintiff's damages at $1,000. Plaintiff filed a motion for a new trial "on the ground that the damages awarded by the jury are grossly inadequate." The trial court allowed this motion. Upon the second trial the record is free of many complaints that are usually urged by defendants who appeal from judgments against them in cases of this kind. As stated by plaintiff in his brief: "The defendant does not complain that the trial court committed any errors in the admission or in the rejection of evidence, nor is there any criticism of any of the instructions given by the court to the jury or of the court's action in refusing to give instructions. No fault is found with the conduct of the trial in any manner by the court or by counsel."

Defendant raises three contentions in support of its argument that we should reverse the instant judgment and enter judgment for defendant, or we should remand the cause for a new trial: "I. The record does not contain evidence of negligence on the part of the defendant's servants." "II. Assuming that the trial

court properly refused to direct a verdict on the issue of the defendant's negligence, it should have granted the defendant a new trial on the ground that the jury's finding on that issue is against the manifest weight of the evidence." "III. The evidence shows that the plaintiff was guilty of contributory negligence as a matter of law."

In 1931 the legislature passed the following Act:

"Sec. 1. In case any injury to the person or property of another is caused by the negligent operation of a motor vehicle by a member of a municipal fire department while such member is engaged in the performance of his duties as fireman, and without the contributory negligence of such injured person or the owner of such property or the agent or servant of such injured person or owner, the municipality in whose behalf such member of such fire department is performing such duties shall be liable for such injury; provided, that in no case shall a member of a municipal fire department be liable in damages for any injury to the person or property of another caused by him while operating a motor vehicle while engaged in the performance of his duties as fireman." (Ill. Rev. Stat. 1941, ch. 70, par. 9.)

This Act was held valid in *Bryan v. City of Chicago,* 371 Ill. 64.

The complaint sets up the aforesaid statute and charges that defendant, while plaintiff was in the exercise of due care for his own safety, by and through its agent, a member of the fire department of the City of Chicago, so carelessly, negligently, wrongfully and improperly ran, managed, operated, controlled and maintained its motor vehicle that it collided with plaintiff's automobile.

About 9 o'clock a. m., March 14, 1932, the station of the Chicago Fire Department at 1642 North Kostner avenue received a fire alarm that called it to the 5900 block on Fullerton avenue. A fire truck left the

station, traveled on Kostner avenue to Fullerton avenue and then traveled west on Fullerton avenue to Central avenue, which is about a mile and a quarter west of Kostner avenue and about three blocks east of the 5900 block on Fullerton avenue. The Fullerton avenue street car line terminated on the east side of Central avenue. Fullerton avenue is about fifty or sixty feet wide and contains two street car tracks and lanes for traffic on each side of the tracks. There are red, green and amber traffic signals on the four corners of the intersection of Fullerton and Central avenues. At the time of the accident there were two or three street cars standing on the tracks, waiting to make the return run eastward. Automobiles were parked between the standing street cars and the north curb of Fullerton avenue, and when the fire truck approached Central avenue it could not enter the intersection from the north side of the street and the driver of the truck drove it to the south side of the street and to the left of the street cars. The truck was driven into the intersection and somewhere about the center line of the intersection there was a collision between plaintiff's automobile, which was proceeding southward on Central avenue and across the intersection, and the truck. The impact caused the firemen on the truck to be thrown from it. Plaintiff is a physician and surgeon and is on the staffs of a number of hospitals in Chicago. Just prior to the accident he was driving his automobile south on Central avenue in the inner lane on the west side of the street. He was driving across the intersection of Central avenue and Fullerton avenue at the time of the impact. The foregoing facts are undisputed. As to facts that are disputed: Plaintiff's evidence tends to show that the fire truck approached Central avenue at a rate of speed in excess of thirty miles per hour and that the speed was not diminished as the truck entered the intersection despite the admitted fact that parked automobiles and

standing street cars on Fullerton avenue prevented the driver of the truck from having a clear view of traffic approaching from the north on Central avenue until the truck passed the parked automobiles and standing street cars and reached the intersection; that as the truck approached the intersection no siren or other signal on the truck was sounded, or, if sounded, it was not sounded in apt time and with enough volume to warn plaintiff of the approach of the fire truck; that plaintiff, as he reached the intersection and proceeded into it, had the green light in his favor and that he was proceeding across the intersection at twenty-five miles per hour; that the truck as it entered the intersection ran through a red stop signal without diminishing its rate of speed and that the said red stop signal did not change to green until the time of the impact; that the truck entered the intersection on the south side, or wrong side, of Fullerton avenue. Upon the question as to whether or not plaintiff was in the exercise of due care at the time of the accident and prior thereto the evidence for plaintiff tends to show that he did not see the fire truck approaching nor did he hear any siren sounding; that he entered the intersection with the green light in his favor and that he proceeded across the intersection at about a speed of twenty-five miles per hour; that the first he knew of the fire truck he "just saw a flash of red and we had an impact"; that as he saw the flash of red he spun his steering wheel to the right and that is the last he remembered. Plaintiff testified that the front part of the truck struck the left-hand doorway of his car and pushed the door against his legs.

Defendant's theory of fact was that the siren upon the truck was being sounded as it approached the intersection and that the driver of the truck had the right to assume that plaintiff and all other drivers of automobiles near by would hear it and would draw their vehicles as near to the right curb as was reasonably

possible and would remain standing until the fire apparatus had passed; that the truck slowed down in its speed as it approached the intersection and that when it entered the intersection its speed did not exceed ten miles per hour; that plaintiff entered the intersection when the green light was about to change; that plaintiff, if he had been in the exercise of due care for his own safety, should have been able, under all the circumstances, to have stopped his car in time to have avoided the collision; that plaintiff's car hit the truck on the right front tire.

Defendant concedes that there is a sharp conflict in the evidence as to the speed of the truck as it approached the intersection and went into it and as to whether the fire truck entered the intersection against a red light. The driver of the truck testified, ''My job is to get to fires as quickly as I can''; that in going to a fire he watches the traffic, trying to get through; that as he reached the intersection street cars obstructed his view and he did not see plaintiff's car until he passed the street cars. We are satisfied that in one of defendant's arguments, hereafter referred to, there is a clear admission that plaintiff's theory of fact as to what actually happened at the time and place in question is sustained by the proof. That plaintiff entered the intersection when the green light was in his favor is, in our judgment, proven by the great weight of the evidence. That the fire truck, when it entered the intersection, ran through a red stop signal light is also proven by the weight of the evidence. One of the witnesses for plaintiff, who was driving a car southward on Central avenue about one hundred feet behind plaintiff's car, testified that the traffic light on Central avenue changed to red at the time of the collision. The major point made by defendant as to the evidence relates to the sounding of the fire siren. It contends that the siren was kept sounding as the truck approached Central avenue and that it continued to

sound until the time of the impact, that plaintiff must have heard it, and therefore it was negligence *per se* for him to enter the intersection even though he had the green light in his favor; that plaintiff should have had a window of his automobile open so that he might hear warning sounds and that he only had one window "slightly open, maybe a half an inch or so on one side for ventilation." Plaintiff testified that he did not hear the siren, and a number of motorists who were on Central avenue at the time also testified that they did not hear the siren. Other witnesses testified to the same effect. There is evidence in the case that has some bearing upon the fact that plaintiff and other motorists on Central avenue did not hear the siren; it is undisputed that March 14, 1932, the day of the accident, was a sharp, chilly, cold day and that *a heavy northwest wind was blowing;* such a wind would undoubtedly tend to lessen the sound of the siren to people to the west of the approaching fire truck. The condition of the weather also accounts for the fact that the window in plaintiff's car was only slightly open. The jury saw and heard the witnesses and the verdict shows that the jury believed the evidence that supports plaintiff's theory of fact. We take cognizance of the fact that two juries have found for plaintiff. After a careful consideration of all of the evidence we have reached the conclusion that we would not be justified in sustaining any of the three contentions raised by defendant, unless we found that there is merit in an argument made by it, to which we will now refer:

Defendant argues that while the facts might make out a case of negligence against a driver of an ordinary vehicle, the driver of a fire vehicle in going to a fire is driving "an authorized emergency vehicle" and "may assume special privileges" granted him by a statute and several ordinances of the City of Chicago, and that when the facts are considered in the light of

the special privileges granted the driver of a fire vehicle, a *prima facie* case is not made out against defendant. To quote from defendant's brief: "From the evidence it is clear that the facts of this case present only a typical instance of firemen driving a truck to a fire. The conduct of the driver of the truck was that of an ordinarily prudent fireman driving a truck to a fire. *To get to the fire as quickly as possible it was his duty, even though he thereby risked his own life, to drive the truck at a high rate of speed and to drive on the left side of the street if traffic conditions required"*; that *"the public necessity . . . that fire vehicles get to fires as quickly as possible imposes a duty on drivers of fire vehicles to do what is forbidden to other drivers. Here it was the duty of the driver to drive through the red light and to the left of the street cars. His duty was to concentrate his attention and energy on getting to the fire. He was not negligent in doing what duty required."* (Italics ours.) Defendant further argues that if the Uniform Act Regulating Traffic on Highways, enacted in 1935, has any bearing upon the instant case (the accident in question happened in 1932) it would be necessary for plaintiff to prove that the driver of the fire truck was guilty of " a reckless disregard of the safety of others" and that plaintiff's evidence does not meet this requirement. Defendant cites clause (4) of section 33 of the Motor Vehicle law of 1919, which reads as follows: "In all cases police vehicles, fire departments, vehicles transporting United States mail, and ambulances shall have the right-of-way over other vehicles. . . ." (Ch. 121, par. 234, Smith-Hurd Ill. Rev. Stat. 1931.) Defendant then cites sec. 1975, ch. 38, Revised Chicago Code 1931, entitled "Traffic," which section provides for stop-and-go signals; also sec. 1979, ch. 38, which reads as follows: "1979. Vehicles exempted from certain rules.] The provisions of this chapter regulating the movement, park-

510

ing and standing of vehicles shall not apply to ambu-lances or fire patrol vehicles, nor to emergency vehicles of the city of Chicago, of Cook county, or of public utilities while the operator of any such vehicle is engaged in the necessary performance of emergency duties.'' Defendant then argues: ''These provisions of the statute and the ordinance mean that in the case at bar the driver of the fire truck was not bound by the rules required to be followed by operators of other vehicles. Here the north traffic lane on Fullerton Avenue between the street cars and the sidewalk was blocked by automobiles. The driver of the fire truck passed to the left of the street cars and was thus on the left side of the street. This act by the operator of a non-emergency vehicle would have violated section 1995, providing 'It shall be unlawful to operate any vehicle upon the left side of any roadway' and section 2022, forbidding the operator of a vehicle to pass to the left of a street car. But these sections were not applicable to the operator of a fire truck as a result of the exemption in section 1979. Similarly he had a right to enter the intersection whether the traffic signal was green or red, since section 33 of the Motor Vehicle Law gave him the right of way over other vehicles.''

Defendant concedes that clause (4) of section 33 of the Motor Vehicle Law of 1919 and the ordinances upon which it relies have been repealed, but it contends that they were in force at the time of the accident in ques-tion and that, therefore, they apply. As to the ques-tion of speed of the fire truck defendant states: ''The fire truck was going to a fire. It is the duty of firemen to get to a fire as quickly as possible,'' and, therefore, it is not negligence for the driver of a fire truck to do what duty requires of him.

If defendant's position is sound then the legislature, in 1931, passed a sham Act—one that has no real force and effect. It has long been the established law of this State and the great majority of the States that a

municipality is not liable for the unlawful or negligent acts of its officers, agents or employees while in the performance of governmental duties, but this doctrine of immunity has often been criticized as unsound in principle and unfair in practice. Some of our Illinois courts, while enforcing the doctrine, have not hesitated to criticize it. (See *Bedtke v. City of Chicago,* 240 Ill. App. 493; *Wasilevitsky v. City of Chicago,* 280 Ill. App. 531; *Schmidt v. City of Chicago,* 284 Ill. App. 570.) In a large city like Chicago it has frequently happened that pedestrians and drivers of vehicles who were in the exercise of all due care for their own safety have been run down through the reckless manner in which the drivers of fire vehicles have driven through the streets in their desire to reach fires in the shortest time possible, and it was to remedy this serious situation that the legislature, in 1931, passed the Act upon which this case is based. It will be noted that the Act does not require that the driver of the truck be guilty of "a reckless disregard of the safety of others," before a plaintiff can recover. The Act holds the City responsible for "the negligent operation of a motor vehicle by a member of a municipal fire department while such member is engaged in the performance of his duties as fireman," provided, of course, that the injured person be without contributory negligence. Defendant admits, as it must, that section 33 of the Motor Vehicle Law of 1919 and the two sections of the Chicago City Ordinances upon which it relies have been repealed, and it is evident that they were repealed to prevent any possible confusion in the enforcement of the Act upon which this suit is based. Section 33, so far as it applied to a motor vehicle driven by a member of the fire department, was, in our judgment, repealed by implication by the Act of 1931, and the two ordinances, so far as they applied to said vehicle, were rendered nugatory by the passage of the Act. The argument of defendant, in effect, is that the Act of 1931

is of no real force and effect, that it is, in fact, a sham statute. We refuse to so hold. The Act was passed to remedy a serious situation in this community, and it means what it plainly states.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.