MARY M. KEARNEY and MARY M. KEARNEY, Trustee of KATE K. HENRY *vs.* JOHN THOMAS SASCER, WILLIAM A. WALLACE, RICHARD H. SASCER and BENJAMIN F. DUVALL.

*Equity—Mistake of Fact and mistake of Law—Inops consilii— How far an Administrator d. b. n. is chargeable on a Confession of Judgment by the Administrator, and how far the Administrator of the Administrator—Scire facias—How far Confession of Judgment of Fiat by an Administrator d. b. n. affects his Sureties.*

Mistake as to the facts will not entitle a party to relief in Equity, if the mistake arose from negligence or want of such diligence as may fairly be expected from a reasonable person.

Application to a Court of Equity for relief against a judgment, will be justified by showing "any fact which clearly proves that it would be against conscience to execute the judgment, and of which the injured party could not have availed himself at law; or of which he might have availed himself at law, but was prevented by fraud, or accident unmixed with any fault or negligence in himself."

The fact that an administrator may have confessed a judgment, and thereby admitted a sufficiency of assets in his hands to pay the same, does not preclude the administrator *d. b. n.* from pleading to a *scire facias* issued on such judgment, that the unadministered assets, with which alone he is chargeable, are insufficient to pay the judgment. *Secus,* in the case of the administrator of the administrator, who must show how he has paid away the estate, in order that the Court may see whether there were assets in his hands properly chargeable with the payment of the judgment.

Where an administrator *d. b. n.* made no defence to a writ of *scire facias* issued against him for the purpose of reviving a judgment against the former administrator, but voluntarily confessed an absolute judgment of *fiat,* and four years afterwards, upon execution being issued, applied to a Court of Equity for relief by injunction, on the ground that he was mistaken as to the amount of assets in his hands, it was HELD:

That such mistake or misapprehension was attributable to his negligence, and that he was not entitled to relief.

Kearney *vs.* Sascer, *et al.*

A Court of Equity will not relieve on the ground of mistake in law, unless the proof in regard to the alleged mistake is as conclusive as the existence of the legal right which is sought to be restrained.

Where an administrator *d. b. n.* had counsel, but when a statement of the amount due on judgment against the former administrator, and agreement to confess judgment of *fiat* thereon was submitted to him, said that it was correct, and that he would sign it himself, and did so sign it, although the plaintiff's attorney suggested to him to confer with his counsel, it was HELD:

That a Court of Equity will not interfere with a judgment so confessed on the ground of *inops consilii.*

A confession of judgment of *fiat* by an administrator *d. b. n.* is only *prima-facie* evidence of sufficiency of assets in his hands as against the sureties on his bond.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The facts are fully stated in the opinion of the Court. The injunction applied for was made perpetual by the Court below, (MAGRUDER, J.,) and from this order the appeal was taken.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY, and ROBINSON, J.

*William H. Tuck,* for the appellant.

Judgments at law are not to be vacated or interfered with, except upon the clearest evidence to sustain the jurisdiction of the Court.

The mistake relied upon, appears to have been one of law, not of fact.

If the agreement operates in law differently from what Sascer supposed it would, equity will not . interfere. *Anderson vs. Tydings,* 8 *Md.,* 427 ; *Campbell vs. Lowe,* 9 *Md.,* 500.

If parties choose to express themselves in the language of an instrument, they must be bound by it. *McElderry vs. Shipley,* 2 *Md.,* 35.

There was no mistake in fact. The evidence shews that the statement and agreement and *fiat* were the result of a previous understanding, and that the appellee, J. T. Sascer, was so well satisfied that he did not deem it necessary to consult his counsel, preferring to act for himself.

The alleged mistake ought to be established by the clearest proof, "as much to the satisfaction of the Court, as if it were admitted." *Showman vs. Miller*, 6 *Md.*, 485; *Watkins vs. Stockett*, 6 *H. & J.*, 445. If any doubt exists, the allegation ought not to prevail, for if such a plea can be supported upon the evidence of the party only, any judgment may be set aside in Equity, and plaintiffs would never be secure.

If a mistake was made under ignorance of his rights, and of the condition of the estate, relief ought not to be granted, because it was his own fault.

It is not every mistake, even of matters of fact, that will call this jurisdiction into exercise. There must have been no fault or negligence on the part of the person complaining. *Marine Ins. Co. vs. Hodgson*, 7 *Cranch*, 336; *Gott vs. Carr*, 6 *G. J.*, 309; *Prather vs. Prather*, 11 *G. & J.*, 110; *Dilly vs. Barnard*, 8 *G. & J.*, 170; *Fowler vs. Lee*, 10 *G. & J.*, 358.

The statement of Sascer that he has no doubt that he signed the paper, under the impression that the personal estate was sufficient, and had no idea of binding himself beyond the assets, ought not to avail ; and the case does not shew such circumstances as would make it unreasonable for him to pay this debt. Even if he did sign the agreement under a false impression, it was his own fault that he did so; for he had held the estate under his father's will since 1861, when his mother died. The negroes had been emancipated in 1864, so that, besides having had the means of paying the debt out of the estate before 1864, he confessed the *fiat* with free knowledge that the negroes had been set free.

According to the will the estate ought to have been closed in 1856, when the youngest child attained the age of 18. When he became admr. *d. b. n.* in 1861, he had power at once to sell property, and pay this and the other debt; but he held on and never passed an account until 1869, and then, without paying this debt or making a dividend among all the creditors, he passed, an account claiming that the whole assets had been administered— much the larger portion having been entirely lost to the estate. If he had executed the will, this state of things would not have happened.

If he had refused to enter the *fiat*, the (appellant's) course was plain. She might have prosecuted her *sci. fa.*, and shewn that he had committed a *devastavit* of the estate, and made himself liable for this debt.

If the claims credited in his account were contracted in carrying on the estate under the will—and this appears to have been the fact—he had no authority to do it. And if they were debts due by the deceased in his lifetime, he ought to have made a dividend among all, and not paid some to the exclusion of the appellant, who was a judgment creditor

This is not such a case as entitles Sascer to the consideration allowed to persons acting whilst *inops consilii*. Every man who contracts may be said to be *inops consilii*, if he actually has no counsel. The indulgence is allowed sometimes where the party cannot obtain counsel. Here Sascer had standing counsel, and if he made the agreement without consulting him, the other party is not to suffer. It often occurs that judgments are entered on the personal appearance of parties. The plaintiffs' counsel presented him the statement as previously agreed upon, and suggested the employment of an attorney, to which he replied "that he had no doubt of the correctness of the statement, and would sign the agreement himself." There is no room for construction of the

agreement on principles of equity, as supposed by the appellees' counsel. It is not pretended that there is any doubt on the language employed. Sascer agreed to enter a *fiat* which was done, and now he says he meant something else, not that the papers did not authorize what was done.

Sascer might have pleaded to the *sci. fa.*, that no assets had come to his hands, or that he had fully administered. Having failed to make the defence, the *fiat* imports assets in his hands just as any other judgment against an administrator would. The case might have been different if the *sci. fa.*, had been against Mrs. Sascer in her lifetime. The judgment was conclusive against her, and she could not make to the *sci. fa.*, any defence she might have pleaded to the original case. But an administrator *d. b. n.*, is only responsible for the unadministered assets coming to his hands, and he may defend himself against a *sci. fa.*, on a judgment against his predecessor.

According to the authorities, there does not appear to have been any doubt of the right of an executor or administrator, by proper pleas, to prevent a recovery beyond the assets properly chargeable with the debt, whether he was sued in debt on the original judgment, or in a *sci. fa.* case; the question has been as to the *form* of the plea; and the case of *Tanner vs. Freeland,* 1 *H. & McH.*, 34, only decides that a *general* plea of *plene administravit* is no bar to a *sci. fa.* The cases there referred to, shew that the administrator ought to have stated specially in his plea how he had administered, so that the Court could see that he had not paid claims over which the judgment had a preference. *Ordwey vs. Godfrey,* 1 *Croke Eliz.,* 575.

In other cases it has been decided that *plene administravit generally* is good, and in some it has been questioned whether a demurrer to the plea should be general or special, but the right to make the defence in one form

or the other, we do not find to have been anywhere denied. *Hutchinson's Case*, 3 *Keble*, 258; *Smith vs. Rawson*, 2 *Keble*, 736; *Richards vs. Newton*, 1 *Ld. Raymond*, 3; *S. C.* 1 *Salk*, 296; 2 *Wm's. Exrs.*, 1805-6; *Foster's Sci. Fa.*, 194-5; (73 *L. L.*, 187.)

This appears to be the common law, to which the practice in the Courts of this State has conformed. There was no need for the answer to shew that Sascer had assets sufficient to pay this debt. What is the use of a judgment, if the question of assets is still to be open when execution of the judgment is sought? There was no occasion to surcharge and falsify the administrators' account. That might have been done, if the *sci. fa.* case had been disputed, but when the *fiat* was entered, the question of assets was closed as between the parties to the *fiat*.

The remedy was at law. If there was any fraud, misrepresentation or mistake, the Court had power to strike out the *fiat* and allow the case to be tried. But if this injunction prevails, the appellant will be without remedy, for she will lose the benefit of this *sci. fa.* as a pending case, and if another be sued out, this proceeding in Equity may be pleaded in bar of its prosecution, and so her debt go unsatisfied. Hence, if this Court should be of opinion that Sascer is entitled to relief against the agreement and *fiat*, the decree ought to be reversed, and the appellees left to their remedy in the Court in which the *fiat* was obtained. *Huston vs. Ditto*, 20 *Md.*, 305.

There is no ground for the jurisdiction of the Court in the supposed liability of the sureties on the administration bond, because the judgment is only *prima facie* as to them, and in the suit at law, they would have every defence that can be resorted to here. Sureties have no standing in Equity when so fully protected by law.

The lapse of time between the *fiat* in April, 1865, and filing the bill, 29th March, 1870, ought to prevent relief.

The appellant had no notice that the *fiat* was to be assailed until nearly five years after it was entered, and after an execution had. been issued and .returned, and a suit instituted on the bond some time in the year 1868. If the appellee, J. T. Sascer, did not intend to abide by the *fiat*, he ought in justice to the appellant, to have proceeded sooner. The question of *laches* must be determined according to the circumstance of each case. There can be no general principle applicable to all. *Hanson vs. Worthington,* 12 *Md.,* 418.

There have been many cases, in this Court, in some of which relief. has been refused, although applied for within comparatively a short time. *Chew Exr. Gibson vs. Farmers' Bank,* 9 *Gill,* 361; *Kemp vs. Cook,* 18 *Md.,* 130; *Munnikuysen vs. Dorsett,* 2 *H. & G.,* 377; *Taylor vs. Sindall,* 34 *Md.,* 38; *Croiser vs. Acer,* 7 *Paige,* 137, 143.

Under all the circumstances of this case, it would not be against Equity and conscience to allow the appellant the full benefit of her judgment. But if any relief ought to be granted in this Court, the decree is erroneous in making the injunction perpetual, without inquiring into the question of assets, and allowing a dividend on the claim, if it is not entitled to be paid in full.

*Daniel Clarke* and *C. C. Magruder,* for the appellees.

The evidence shows there was an agreement filed for a *fiat,* and also a statement made out by the plaintiff's attorney, upon which the entry of the amount was made by the clerk. Neither the agreement for the *fiat,* nor the statement showing how the amount was arrived at, is offered in evidence. They are lost or have disappeared from the papers in the cause. But the proof shows that they were separate and distinct papers.

The evidence does not show that Sascer, in signing the agreement to confess a *fiat,* either intended to confess, or

did confess an absolute *fiat* for the whole amount, which the statement might have shown to be due.

The more reasonable construction of the testimony, and the acts of the parties, is that Sascer signed the agreement confessing a *fiat*, and only assented, or intended to assent to the statement as showing the correct amount due on the judgment. There is nothing in the evidence which clearly shows that by the agreement which he signed, he either agreed, or intended to agree, that execution should go against him absolutely for the amount contained in the statement.

Where a party is *inops consilii*, as was the case with Sascer, and two constructions may be given to an agreement prepared by the counsel of the opposite party, and signed by Sascer, the Court will adopt that construction which accords with the understanding of the party who signed it, rather than the construction which it would be inequitable for the defendant to avail herself of, and which it would be unjust to enforce.

The legal effect of the confession of a *fiat*, or an agreement for the confession of a *fiat*, is not to ascertain the amount to be recovered, but only the right to execution. *Evans' Practice*, 65 to 69 ; *Barnes vs. Dodge,* 7 *Gill*, 116; 2 *Harris' Entries*, 728 ; 2 *Evans' Harris* 460 ; *Foster on Scire Facias*, (73 *Law Lib.*,) 41, 42 ; 2 *Wms. Saunders*, 6, *n.* 1 ; 2 *Tidd's Practice*, (8th *Ed.*) 1154.

A partial failure of assets does not sustain a plea of *plene administravit*. *Tanner vs. Freeland*, 1 *H. & McH.*, 34.

The account of Sascer, passed in the Orphans' Court, shows a balance in his hands as administrator, and the execution on the *fiat* realized over five hundred dollars. Having assets, he could not have defended himself succesfully against a *fiat*. There was no error or mistake therefore, in his confessing a *fiat*. And the object of the bill, and the injunction, is not to get rid of the judgment

of *fiat*, but to restrain the appellant within an equitable use of the same, and to enjoin her from further enforcing a *fiat* to which she was legally entitled, and against which the appellee, J. T. Sascer, could not have successfully defended himself.

If the appellant is attempting to levy more than is due under the *fiat*, or than the appellee, Sascer, is liable to pay, the proper remedy is by injunction. Having a small amount of assets in his hands, he could not prevent an absolute judgment of *fiat*, and the only mode by which he could obtain relief is by an injunction to restrain the inequitable enforcement of the judgment of *fiat*. *Moore vs. Garretson*, 6 *Md.*, 444; *Hutson vs. Ditto*, 20 *Md.*, 305; 2 *Story's Equity*, secs. 3, 887, 894; *Marine Ins. Co. vs. Hodgson*, 7 *Cranch*, 336; *Barnes vs. Dodge*, 7 *Gill*, 116, 118.

The bill, answer and evidence in the cause show that the plaintiff in the judgment *vs.* John Thomas Sascer, administrator *d. b. n. c. t. a.*, and also in the suit on his bond, was seeking to enforce the payment of more than the administrator *d. b. n. c. t. a.*, was legally and equitably liable for, and therefore should be enjoined. The answer does not claim that the complainant, Sascer, has assets in his hands liable for and sufficient to pay the judgment in which the *fiat* was confessed. The account of Sascer, passed in the Orphans' Court, showing a balance of $41.86, is not excepted to, and no proof was taken to surcharge and falsify the same, or to dispute the items.

Accounts passed by the Orphans' Court are *prima facie* correct. *Spedden vs. State*, 3 *H. & J.*, 251; *State vs. Massey*, 3 *H. & J.*, 276, (*n.*); *Owens vs. Collinson*, 3 *G. & J.*, 25.

This balance of assets, $41.86, cannot now be disputed. More than this sum, to wit, $500.74, was realized by the sheriff's return upon the execution issued on the *fiat*,

being property or assets which came to his hands after-wards.

It would therefore be inequitable to permit the plaintiff to have further execution. As the confession of the *fiat* gives only the right to execution, and does not settle the amount for which execution is to be enforced, it does not operate as a technical estoppel of the right to enquire into the amount of assets.

But the proof shows, that if the agreement for the confession of the *fiat* can be construed to include the amount for which the plaintiff in the judgment should have the right of execution, not only did Sascer act under a mistake in reference to the effect of the confession of the *fiat* but the plaintiff's attorney, in whom Sascer, *inops consilii* was confiding, also acted under a mistake in making up the statement of the amount.

The whole arrangement which led to the preparation of the statement upon which it is claimed to enforce the *fiat* against Sascer individually, and to make his sureties amenable for the large amount over and above assets which came to his hands, was based upon mistakes of law and facts on the part of both Sascer and the attorney for the appellant.

It is the peculiar province of a Court of Equity to grant relief in cases like the present, where *both* parties acted under a mistake of fact as well as law, and where the party against whom the process of a Court of Law is sought to be inequitably enforced, was relying upon the statements and representations made by the other party. *Kerr's Injunctions in Equity*, 53, *notes; Hodgson vs. Marine Ins. Co.*, 7 *Cranch*, 336 ; *Barnes vs. Dodge*, 7 *Gill*, 116 ; *Kerr on Fraud and Mistake*, ch. 2, *p.* 396 ; *Fitzgerald vs. Peck*, 4 *Littell* (*Ky.*) 125.

Where an agreement is entered into between two parties in mutual mistake as to their relative and respective rights, either of these is entitled to have it set aside.

---

---

*Cooper vs. Phibbs*, 2 *Law Reports*, (*Eng. & Ir. Appeals*,) 149.

Where the legal principle is confessedly doubtful, and one about which ignorance may well be supposed to exist, a person acting under a misapprehension of the law will not forfeit any of his legal rights by reason of such mistake: *Lamott vs. Bowly*, 6 *H. & J.*, 500, 525 ; *Cumberland Coal and Iron Co. vs. Sherman*, 20 *Md.*, 117, 151, 152.

ROBINSON, J., delivered the opinion of the Court.

Thomas Sascer died in the year 1841, seized and possessed of a large and valuable real and personal estate, and by his will directed the same should be kept together until his youngest daughter then in her third year, should attain the age of eighteen. The debts due and owing by him, he also directed should be paid out of the rents and profits of the estate.

Letters testamentary were granted to Zadock Sascer, and these being subsequently revoked, letters of administration *de bonis non* were granted to Dorinda E. Sascer, widow of the testator.

In 1846, the appellant recovered a judgment against the said Dorinda, administratrix *d. b. n.*, for the sum of eleven thousand and five hundred dollars.

In 1861 she died, and letters of administration *d. b. n.*, were granted to John Thomas Sascer, one of the complainants.

In 1865, the appellant caused a *scire facias* to be issued on said judgment against Sascer, administrator *d. b. n.*, and a judgment of *fiat was confessed* by him for the sum of seven thousand nine hundred and eighty-nine dollars and twenty-five cents. The *statement* and *agreement* in pursuance of which the *fiat* was entered are lost or have disappeared from the papers in the cause, but evidence in regard to the same was taken by both parties, without exception.

Moreover the complainants in their bill state, "that a *fiat* was obtained for the sum of $11,989.$\frac{25}{100}$, upon the agreement of the counsel for the said plaintiff and the said John T. Sascer, administrator *d. b. n.*," thus admitting that the amount and form of the judgment are according to the agreement of parties.

Upon the judgment of *fiat* thus entered, execution was issued and this bill is filed by Sascer, administrator *d. b. n.*, and the sureties on his administration bond, praying that the same may be enjoined.

The equities of the bill rest mainly on two grounds: First, that the agreement in pursuance of which the judgment of *fiat* was entered, was signed by Sascer, administrator *d. b. n.*, in utter ignorance of its contents, and without knowing the effect and operation of the same, and that at the time when the *fiat* was confessed there was but a small amount of personal property in his hands chargeable with the payment of the judgment.

Secondly, that in confessing a *fiat* he did not intend to *charge himself personally with the payment of the same*, and was entirely ignorant that such would be its *legal effect.*

An administration account passed in 1869, and showing a balance of only $41.$\frac{86}{100}$, as applicable to the payment of the judgment upon which the *scire facias* was issued, is also filed with the bill.    Apart from the administration account, the only evidence in support of the allegations in the bill is the testimony of Sascer one of the complainants, who says that if he signed the agreement in pursuance of which the *fiat* was entered, he did so under the impression that the personal estate in his hands was sufficient to pay it; that he never meant to make himself personally responsible, and had no idea that the judgment would bind him further than he had assets in his hands as administrator.

The first question to be determined then, is whether the complainants are entitled to relief on the ground that the

judgment of *fiat* was confessed by Sascer, administrator *d. b. n.*, under the impression that the personal estate was sufficient to pay the same. Now whilst it is well settled, that Courts of Equity will grant relief in certain cases where parties have acted *in ignorance or under misapprehension in regard to material facts*, it is equally clear that they do not lightly interfere with judgments rendered after trial, or deliberately confessed by the parties. It is not sufficient to state merely that injustice has been done, but that it has been done under such circumstances as will authorize the Court to interfere. *Mistake as to facts* will not entitle a party to relief if the mistake arose from negligence or want of due diligence, such as may be fairly expected from a reasonable person. What is the exact nature or degree of mistake, *not attributable to negligence,* in regard to which a party may be entitled to relief as distinguishable from mistake due to *negligence,* and therefore not relievable cannot be well defined, and must in a great measure depend upon the discretion of the Court under all the circumstances of the case. The jurisdiction to relieve in such cases being purely equitable, it must be exercised upon equitable principles. As a general rule, however, we safely say, that "any fact which clearly proves it to be against conscience to execute the judgment and of which the injured party could not have availed himself at law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself," will justify an application to a Court of Equity. *Marine Ins. Co. vs. Hodgson,* 7 *Cranch,* 336.

Was the mistake then in this case such as the complainant Sascer might have availed himself of under the proceedings in the *scire facias?* The appellees insist that, inasmuch as there were assets in the hands of the administrator *d. b. n.*, the latter could not have prevented an *absolute judgment* of *fiat,* although in point of fact the

assets were wholly insufficient to pay the judgment. But in this view we do not concur. An administrator *d. b. n.*, is chargeable only with unadministered assets which come into his hands, and the fact that the former administrator may have confessed a judgment and thereby admitted a *sufficiency of assets* in his hands to pay the same, does not preclude an administrator *d. b. n.*, from pleading to a *scire facias* issued on such judgment that the unadministered assets for which alone he is responsible, are *insufficient* to pay the original judgment.

In the cases relied on by the counsel for the appellees, they have failed to distinguish between cases where the *scire facias* is issued against an *administrator* of the *original administrator* to revive a judgment recovered against the latter, and cases where the *scire facias* is issued against an *administrator d. b. n.*, who is entitled to and chargeable only with assets not administered by his predecessor. Where a judgment is recovered against an administrator he admits thereby a sufficiency of assets, and becomes personally liable for the payment of the same, and in the event of his death, his personal estate in the hands of his administrator is of course also liable. The *administrator* of the *administrator* could not in such a case plead *plene administravit*, because it would not necessarily follow that he had rightfully paid away the assets as against the judgment creditor. The claim of the latter may have precedence or priority to the claims paid. And such was the case in *Ordway vs. Godfrey, Croke Eliz.*, 575. There the *scire facias* was brought against the *administrator* of the *administrator*, and the Court decided that the plea of *plene administravit* was bad, because they say "the administrator may have paid *claims* not equal to, nor allowable against the *judgment creditor.*" In *Tanner vs. Freeland*, 1 *H. & McH.*, 34, the *scire facias* was also issued against the administrator of

the administrator, to revive a judgment recovered against the original administrator, and the plea was held bad for the reason assigned and upon the authority in *Croke Eliz.*, 575. In all such cases it is necessary for the administrator of the administrator to show how and in what manner he has paid away the estate, in order that the Court may see whether there were assets in his hands properly chargeable with the payment of the judgment upon which the *scire facias* is issued.

But in this case the complainant, Sascer, is the *administrator d. b. n. of Thomas Sascer*, and not the *administrator of Dorinda E. Sascer*, the former administratrix, and as such he is liable only for the unadministered assets of Thomas Sascer, and to a *scire facias* against him to revive a judgment recovered against Dorinda Sascer, administratrix, there is no reason why he should not be allowed to plead an insufficiency of assets to pay the same. If so, then the complainant, Sascer, had a defence to the *scire facias* which he could have availed himself of at law, and the only remaining question on this branch of the case, is whether he was prevented from making this defence by a mistake or ignorance of facts in regard thereto, *unmixed with any fault or negligence of his own.*

In *Gott vs. Carr*, 6 *G. & J.*, 309, it was said "that Chancery will not relieve after a recovery at law upon testimony which with due care and diligence the party might have procured or had the benefit of upon his trial at law." It is not sufficient that he acted in ignorance of, or under a misapprehension in regard to facts, but he must use proper diligence in ascertaining the same. Here the *scire facias* was issued against Sascer, the administrator *d. b. n.*, for the purpose of enforcing the payment of the amount due on the original judgment. The trial term of Court was approaching, and if he had any defence to make, it was his duty to have made it. He knew, or ought to have known, whether there were assets

in his hands chargeable with the payment of the judgment. He had the means of information, and it was in his power, by the exercise of diligence, to have ascertained the exact condition of the estate. Instead of doing this, he voluntarily and deliberately confesses an absolute judgment of *fiat,* and nearly four years afterwards, when execution is issued, he comes into a Court of Equity for relief on the ground, that in confessing the *fiat* he was mistaken in regard to the amount of assets in his hands properly liable for the payment of the same. He does not allege that he was prevented from making this defence by *fraud, accident* or *surprise,* nor does it appear he could not have availed himself of it by the exercise of due diligence. In *Prather vs. Prather,* 11 *G. & J.,* 110, where relief was sought in equity against a judgment by default, the court said, " From the very character of the defence, he must have known of the existence of those facts which constituted it, nor does it appear that he was prevented from taking such defence by fraud, accident or the conduct of the opposite party." We are of opinion, therefore, in this case, that the mistake or misapprehension on the part of the administrator *d. b. n.* in regard to the assets in his hands, is attributable to *his negligence,* and that he is not entitled to the interposition of a Court of Equity on this ground.

The next ground relied on, is that the complainant Sascer did not know the *legal effect* and *operation* of *a judgment of fiat,* and did not intend to make himself *personally* liable.

Although Courts of Equity may be said to exercise a liberal jurisdiction in regard to *mistake as to facts,* yet the same rule does not apply as to *mistakes in law.* Every man is presumed to know the law, and to act upon the rights which it confers or supports, and hence it is held to be culpable negligence to do an act and then set up his ignorance of the law as an excuse. Courts of Equity

will not, therefore, ordinarily grant relief on the ground of mistake in matter of law, 1 *Story's Equity Juris., sec.* 111; *Kerr on Injunctions,* 52—54; *Kerr on Fraud and Mistake,* 330. Whatever exceptions there may be to the rule, say the Supreme Court, in *Hunt vs. Rousemaniere,* 8 *Wheaton,* 211, 1 *Peters,* 1, and *Bank of U. S. vs. Daniel,* 12 *Peters,* 32, "they will be found few in number and to have something peculiar in their character." In addition to *Lamott vs. Bowly,* 6 *H. & J.,* 500; *Cumberland Coal and Iron Co. vs. Sherman,* 20 *Md.,* 117; in this Court the cases in which such relief has been granted will be found in *Story's Equity Juris. vol.* 1, *sections* 111—139. The view we take of this case makes it unnecessary to review these cases, or the principles upon which they are decided, for they all agree that a Court of Equity will not interfere unless the proof in regard to the alleged mistake is of the most *conclusive* and *satisfactory* character. In fact, we may safely say that the proof ought to be as conclusive as the existence of the legal right which is sought to be restrained. Here the proof rests mainly upon the testimony of Sascer, the administrator *d. b. n.,* who says, he never meant to make himself liable for the judgment beyond the assets in his hands, and had no idea that such would be the legal effect and operation of the judgment of *fiat.* On the other hand, Mr. Brooke, the plaintiff's attorney, says, that when he submitted to Mr. Sascer the statement showing the amount due on the original judgment, and the agreement to consolidate the two judgments and confess a *fiat* thereon, he admitted the money was due, and regretted it had not been in his power to pay it long before, and offered to mortgage his interest in the real estate inherited from his father, together with all his other property, to secure the payment thereof, provided the plaintiff would release the sureties on his administration bond. Here then is evidence to prove not only that the complainant was willing to make

himself personally liable for the payment of the judgment, but was ready and anxious to mortgage all of his property for that purpose. Without intending to assail the administration account, we can very well understand by reference to it why he may have felt this sense of responsibility. The inventory shows that the assets which came into his hands were appraised at $32,478.56, and after deducting $20,002.00, the appraised value of the negroes fixed by the Constitution of 1864, and other credits, there remained in his hands $8,050.00. Although the time fixed by the testator for the settlement of the personal estate had long since passed, he still continued to keep the property together, and the sales realized from the crops in the years 1863 and 1864, the two years previous to the confession of *fiat*, amounted to $22,094.36. In view of this evidence we are of opinion that the complainants have failed to establish, by conclusive and satisfactory proof, their claim to relief upon the ground that Sascer did not intend to make himself personally liable, and would not have confessed a judgment of *fiat* if he had known that such would be its legal effect and operation.

We are also of opinion that there is no ground here for the application of the doctrine of *inops consilii*, in the sense in which that expression ought to be used. He had counsel, but when the statement and agreement was submitted to him, he said it was correct and would sign it himself, and this, too, after Mr. Brooke suggested to him to confer with his attorney. It is not even suggested that any undue advantage was taken, or any fraud practiced, upon him, and to apply the doctrine of *inops consilii* under such circumstances, and to hold that a Court of Equity ought to interfere with a judgment thus deliberately confessed, upon such a ground, would be to open wide the door in all cases where parties prefer to confess judgments in person rather than by attorney.

As to the sureties on the administration bond, the confession of *fiat* is but *prima facie* evidence of sufficiency of assets as against them, and in a suit to enforce the same they can show the true condition of the estate at the time of the confession of *fiat,* and the amount of assets in the hands of the administrator *d. b. n.* properly chargeable with the payment of the same. There is no ground, then, for the interposition of a Court of Equity in their behalf.

Entertaining these views, the injunction will be dissolved and the bill dismissed.

> *Decree reversed, injunction dissolved*
> *and bill dismissed.*

(Decided 30th January, 1873.)