## PUBLIC SERVICE COMMISSION *v.* SUN CAB COMPANY, INCORPORATED.

[No. 11, January Term, 1931.]

*Decided March 19th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Wm. Cabell Bruce* and *John Henry Lewin,* for the appellant.

*Randolph Barton, Jr.,* with whom were *A. E. Jacobson* and *Samuel J. Aaron* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The Public Service Commission of Maryland, composed of Harold E. West, J. Frank Harper and Steuart Purcell, appellant, by an order (No. 16043), passed August 20th, 1930, required the Sun Cab Company, which operates about two hundred taxicabs in Baltimore, "to take out and carry public liability insurance in a responsible insurance company or companies and in form satisfactory to the Commission, and in the amount of ten thousand dollars ($10,000) for any one person, and twenty thousand dollars ($20,000) for any one accident for each cab operated by the said company or by any lessee, licensee or permissive user of the said company." In lieu of this requirement the company was authorized to provide and maintain an indemnity reserve fund of not less than $100,000. A petition for a rehearing was filed, and thereafter, on September 5th, 1930, an order (No. 16104) was passed in the original form, but with reduction in the liability for each cab to $5,000 and $10,000,

or, in lieu thereof, a cash indemnity reserve to $60,000. Thereupon the appellee filed a bill for injunction, denying the authority of the commission to pass such an order, and praying a preliminary injunction or staying order pending the termination of the equity proceeding, on which a restraining order was passed as prayed.

The commission answered and demurred, and the evidence taken before the commission was the only evidence submitted to the chancellor. There is no need to repeat the allegations of the bill or of the answer, nor to rehearse the evidence, as there is only one question involved, and that is the power of the commission to require taxicab owners to take out indemnity insurance as a prerequisite to a permit to operate cabs in this state.

The appellant admits there is no statutory provision which in terms authorizes it to impose on any taxicab owner the condition that, before he can engage in the business of conveying passengers for hire, he must take out indemnity insurance, but contends that the authority is among the implied powers of the commission, and that the logical and reasonable construction of the Act of 1910, ch. 180 (Code, art. 23, sec. 349 *et seq.*), warrants the passage of the orders in this case as conducive to the safety of passengers and others using the public streets. There is no dispute of the authority of the commission over the operation of taxicabs.

It is provided by article 23, section 379, that "No common carrier, * * * shall * * * exercise any franchise or right * * * without first having obtained the permission and approval of the commission. The commission shall have power to grant the permission and approval herein specified whenever it shall, after due hearing, determine that * * * such exercise of the franchise or privilege is necessary or convenient for the public service"; and, by section 373, that, "whenever the commission shall be of the opinion, after a hearing, had upon its own motion or upon complaint, that the regulations, practices, equipment, appliances or services of any common carrier or other such corporation in respect to any services, transportation of persons, freight or prop-

erty within this state, are unjust, unreasonable, unsafe, unreasonably improper or inadequate, the commission shall determine the just, reasonable, safe, reasonably adequate and proper regulations, practices, equipment, appliances and service to be in force and to be observed in respect to such transportation of persons, freight and property, and so fix and prescribe the same by order to be served upon every common carrier or other corporation to be bound thereby"; and, by section 362, that "every corporation, person or common carrier performing the services designated in the preceding sections shall furnish, with respect thereto, such service and facilities as shall be safe and adequate and in all respects just and reasonable."

There were other sections quoted in the appellant's brief, but it is unnecessary to refer to them here, as the commission derives its authority from the sections here quoted, or it does not have any such power as it here undertakes to exert. The powers of the commission are such as are conferred by the Act of 1910, ch. 180, and amendments, known as the Public Service Commission Law, and all its acts are legislative; but, unlike the Legislature, it is limited strictly to the powers so delegated. *Gregg v. Public Service Commn.,* 121 Md. 1, 87 A. 1111. As stated by Judge Offutt in *Public Service Commn. v. Phila., B. & W. R. Co.,* 155 Md. 104, 114, 141 A. 509, 514: "It exercises a naked statutory authority, and has no power save such as were expressly granted to it by the Legislature and such implied powers as are necessary to enable it to exert its express powers." The appellant cites and quotes *Opinion of the Justices,* 251 Mass. 569, 147 N. E. 681; *Opinion of the Justices,* 81 N. H. 566, 129 A. 117, 39 A. L. R. 1023; *Sprout v. City of South Bend,* 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833; *People v. Martin,* 203 App. Div. 423, 197 N. Y. S. 28; *Weksler v. Collins,* 317 Ill. 132, 147 N. E. 797; *Commonwealth v. Slocum,* 230 Mass. 180, 119 N. E. 687, and *Lutz v. New Orleans* (D. C.), 235 Fed. 978, as authorities for the constitutionality of statutes and ordinances requiring taxicab owners to take out indemnity insurance as a prerequisite to a license to operate cabs.

Conceding this to be true, and the authorities almost without exception so hold (see note to *Packard v. Banton,* 264 U. S. 142, 44 S. Ct. 257, 68 L. Ed. 596), we have no such statute here, unless the legislative requirement of such security be read into the Act of 1910 and is one of the instances of an implied power "necessary to enable it (the commission) to exert its express powers."

For its contention that such an order as the one here contested is justified as a "practice" conducive to the safety of passengers, and which would make the streets safer for those using them, the appellant's sole reliance is on statements, made in several of the cases cited by them, that such legislation (and they were only considering statutes or ordinances passed in pursuance of statutes) would result in greater care on the part of operators and more caution on the part of the owners in the selection of drivers.

The courts are not concerned with the reasons which move the Legislature to enact legislation, the only judicial considerations being those of power to enact a law, and the intent, if any question be raised as to its meaning, and it is the question of legislative intent under a statute, and the meaning which the commission ascribes to it, which we must decide. What we here say is that the Legislature has the power to impose a tax, license or fee on cabs which use the roads and streets of the state for hire, but that it has not undertaken to exert this power through the statute now before this court for interpretation, and that no such power exists in the commission for the exercise of such authority as it has, by the passage of the order complained of, assumed.

Nearly all of the decisions are as to the validity of statutes and ordinances imposing license fees on taxicabs and motor-busses operated on public streets and roads for hire, and, while some of the courts have assigned the speculative guessing of added safety as a legislative reason for such statutes, they all put them on the ground, which is unassailable, that the Legislature has the right to impose or authorize the exaction of such a requirement on those using the public highways for gain as a condition precedent to such use. The

power of the Legislature to impose this condition on vehicles operated for hire or gain, as stated in *Packard v. Banton,* 264 U. S. 140, 144, 44 S. Ct. 257, 259, 68 L. Ed. 596, 607, 608, to which there appears to be no dissent anywhere, is: "The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary, and, generally at least, may be prohibited or conditioned as the Legislature deems proper." The purpose of such legislation, as stated in *Opinion of the Justices,* 251 Mass. 569, 147 N. E. 681, 699, is: "To protect careful travelers on the highway injured by negligence in the operation of motor vehicles and to afford them some redress for such injuries."

The appellant contends in effect that, while the Legislature did not in terms require cabs or motor vehicles operated for hire to take out indemnity insurance, it intended that they should, and that its intention is expressed by the "practices" and "safety" clauses in the act. We do not have any expression of the Legislature in the act as to what its purpose or intention was, but we do have the construction which an administrative board or creature· of the Legislature, from which that board derives all its authority, places on it. It assumes to do what the Legislature has not done. The construction of law is a judicial function, and, unless the language of a statute is so clear and unambiguous as to construe itself, it is for the courts to say what the Legislature means and intends. *Marbury v. Mercantile Building Co.,* 154 Md. 438, 140 A. 836; *Maryland Theatrical Corp. v. Manayunk Trust Co.,* 157 Md. 602, 609, 146 A. 805. But while it is the province of the courts, and not the Legislature, to interpret the law, the courts are not shut off from any discussion or sources of information available to the Legislature in order to ascertain the legislative intent. *Bangs v. Fey,* 159 Md. 548, 152 A. 508; *Lewis' Sutherland Statutory Construction* (2nd Ed), secs. 470, 471.

The contention is here made that the order establishes a practice which would tend to the public safety. The brief does not attempt the definition of a "practice," and no author-

ity is cited. The only case we find is *Ex parte Delaney,* 43 Cal. 478, to test the validity of an ordinance under which the petitioner had been arrested for profanity, which provided for the prohibition, suppression, or regulation of "all occupations, houses, places, pastimes, amusements, exhibitions and practices which are against good morals, contrary to public order and decency, or dangerous to the public safety." There the court said: "The word 'practices,' as used in the statute, necessarily implies an act often repeated by the same person." "A succession of acts of a similar kind or in a like employment." 3 Bouv. Law Dist., Rawles' Ed., 3rd Rev., 2650. "Practices' is defined in the Oxford Dictionary as "the action of doing something; performance, execution; working, operation; method of action. A habitual way or mode of action; a habit; something done constantly or usually; a habitual action." In none of these do we see any meaning or interpretation ascribed to the word from which it might be inferred that the "practices" of a public utility or carrier have to do with anything except its physical operations which have been, or, after an order of the commission, would become, customary and usual.

We cannot, therefore, justify the action of the commission on the ground that it is or would be one of the "practices" intended by the statute, nor do we think it can be supported under the safety clauses of the act. It is not a device, contrivance, equipment, facility, practice, operation, or regulation having any relation to the public safety. Such a requirement as the order of the commission imposes is legislative, and, until the Legislature speaks, those who use the public roads and streets of this state for business or pleasure are not required to do anything except to pay their taxes and the license fees required by the Motor Vehicle Act (Code, art. 56), subject to such regulations as are provided by law.

Objection was also made to the order that it was not general in its application to all cabs, but, inasmuch as we hold that the commission has no authority to pass such an order on any or all cab owners, the objection need not be considered.

*Decree affirmed.*