JOHN K. WEAVER ET AL. *v.* JOSEPHINE McGONIGALL ET AL.

[No. 37, January Term, 1936.]

*Decided February 20th, 1936.*

The cause was argued before BOND, C. J. URNER, OF-
FUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*John S. Young,* for the appellants.

*William C. Walsh,* with whom were *Robert H. Archer*

and *Tydings, Sauerwein, Levy & Archer* on the brief, for the appellees.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case involves the construction of the residuary clause of the last will and testament of John A. Fulton, late of Allegany County, Maryland, deceased, and the determination of the persons entitled to the residue of his estate, which residue is disposed of by paragraph 23 of said last will and testament, the provisions of which are as follows: "I direct all the rest, residue, reversion and remainder of my estate, real and personal whatsoever and wheresoever, to be converted into cash as conveniently may be after my decease, and for that purpose I hereby authorize my executor hereinafter named, or its successor, to sell and dispose of all my personal estate at public or private sale or sales for such price or prices and upon such terms and conditions as to it may seem proper, and to grant and convey the same to the purchaser or purchasers thereof, his, her or their heirs and assigns. All of the said rest and residue of my estate I give and bequeath to my lawful heirs, being my first cousins, to be divided equally among them, share and share alike."

John A. Fulton died in Cumberland, Maryland, on February 14th, 1934, leaving a last will and testament dated April 1st, 1926. There are three codicils to this will; the first being dated the day following its execution, April 2nd, 1926; the second being dated January 15th, 1931; and the last being dated August 2nd, 1932. The Liberty Trust Company, of Cumberland, a body corporate, was appointed by the will as sole executor of the estate of the testator, and to it letters testamentary upon said estate have been duly granted by the Orphans' Court of Allegany County.

The item bequeathing the rest and residue of his estate "to my lawful heirs, being my first cousins," was the provision of the will concerning which the executor, one of the appellees, was in doubt, and for the purpose of

having this paragraph of the will construed and the distributees of the estate definitely ascertained, the said executor filed its bill of complaint in the Circuit Court for Allegany County, naming all the known heirs and next of kin of the testator as defendants.

At the time of the testator's death, his nearest living relatives were two first cousins, Josephine McGonigall, one of the appellees, and her sister, Mary Scarborough, both of whom were original defendants below. Since the institution of this suit, however, Mary Scarborough has departed this life, intestate, leaving surviving her, as her next of kin and heirs at law, her husband, J. Harvey Scarborough, and an only child, Miller Scarborough, and by appropriate proceedings her husband and son have been substituted in her place and stead, as parties to this suit. At the time of the execution of the original will, the testator had three first cousins living, namely, Josephine McGonigall, Mary Scarborough, and Arabella Weaver. Arabella Weaver died some time between August 1st and 8th, 1931, leaving, as her next of kin and heirs at law, her children, namely, John K. Weaver, Daisy Weaver Mayhew, Virginia Weaver Thackery, Caroline Weaver Smith, and Emma May Dennis. The first three above named children are among the appellants in this case, the last two being among the defendants who did not appeal.

Had the deceased died intestate, his next of kin and heirs at law, being his two first cousins living at the time of his death, would have inherited his entire estate; these were Josephine McGonigall and Mary Scarborough; and upon the latter's death, which occurred after the death of her cousin, and pending the administration of his estate, the interest so acquired by inheritance from her cousin would have passed to her surviving husband and only son, through the legally constituted personal representative of her estate. In other words, the estate of Mr. Fulton would have then been distributed under the provisions of section 135 of article 93 of the Maryland Code, which is as follows: "After children, descendants, father, mother, brothers and sisters of the deceased, the child

or children, grandchild or grandchildren of brothers and sisters of the deceased and their descendants, all collateral relations in equal degree shall take, and no representation amongst such collateral shall be allowed, and there shall be no distinction between the whole and half blood."

It is apparent, therefore, that, under the inheritance laws of this state, the death of Arabella Fulton Weaver prior to the death of her first cousin, John A. Fulton, would have precluded the possibility of representatives of her estate participating in the estate of the latter, in event any other one or more of his first cousins were living at the time of his death; it being conceded that at such time his next of kin and heirs at law were centered in the first cousin line of descent, and that under the statute above quoted, "no representation amongst such collaterals shall be allowed."

The primary and vital question before us, therefore, is: What is the legal effect of the residuary clause of the will now under consideration? Or, more particularly, what qualifying effect, if any, have the words "being my first cousins" upon the words "my lawful heirs," found in the sentence "my lawful heirs, being my first cousins?" As viewed in this light, and giving to these words the ordinary acceptation of their simple and unambiguous meaning, there can be no doubt, we think, that the words "being my first cousins" added no legal force and effect to the words "my lawful heirs," and that the legal effect of the paragraph of the will in which they are found is unchanged by omitting the phrase "being my first cousins" altogether. Such an inference is logical, because the testator sought to dispose of his residuary estate in the same manner as if he had died intestate, and therefore directed that it be distributed to his "lawful heirs." It is true, the term "heirs," in its technical sense, applies to real estate inheritors, but, as was observed by the learned chancellor below, it is a term frequently used and applied to legatees or donees of personal as well as real estate. Preceding the residuary clause are found in the will a number of specific bequests to various indi-

viduals and religious organizations; and the three codicils in the document deal entirely with such items, and in no manner affect the residuary clause. As we have heretofore indicated, under the strict terms of the residuary clause of the will, as under the inheritance and distribution laws of this state, the residuary estate of the testator, as directed by the chancellor, is distributable to Josephine McGonigall and the personal representatives of Mary Scarborough, to the exclusion of all other claimants. It is from a decree to this end that this appeal is taken.

The theory of the appellants is predicated upon the assumption that the devise to the first cousins is not a gift to a class, and therefore, upon the death of Mrs. Weaver, such part of the testator's estate as she would have taken, had she survived him, became vested in her legal representatives. Section 335 of article 93 of the Code provides: "No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specially named as devisee or legatee, or who is or shall be mentioned, described, or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the life time of the testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator." And section 335A of the same article, Code Pub. Gen. Laws (Supp. 1929), provides: "In all wills executed after July 1st, 1929, unless a contrary intention is expressly stated in the will, the provisions of Section 335 in regard to lapse shall apply to all devises and bequests to two or more persons as a class in the same manner as though such devises or bequests had been made to such persons by their individual names." It will be observed that the latter section is designed to prevent from lapsing "all devises and bequests to two or more persons as a class," and to protect devisees and legatees of a class in the same manner as it is intended by section 335 to protect

designated or identified devisees and legatees. As shown by reference to section 335A, its provisions are not applicable to wills executed prior to July 1st, 1929, and, to meet this obstacle, in the contention of the appellants it is strenuously urged that the execution of the second codicil to the will was a republication of its entire contents. That codicil is dated the 15th day of January, 1931, during the lifetime of Mrs. Weaver, and it is contended that its effect is a republication of the will, thereby taking it out of the class of wills excluded from the operation of section 335A, and preventing the lapsing of any estate which may have been devised or bequeathed to Mrs. Weaver.

In *Miller's Construction of Wills,* par. 61, it is said: "The execution of a codicil to a will is in legal contemplation a republication of the will, in the absence of a contrary intention. There may be an express or implied intention to republish shown by the codicil. An express intention is indicated by words of republication, ratifying or confirming the will. An implied intention to republish the will is shown by the mere fact of the execution of the codicil. The republication of a will by a codicil is said to be tantamount to the making of that will *de novo.* It brings down the will to the date of the codicil and makes it speak, as it were, at that time, for most purposes. The effect of a codicil confirming the will is to make the same disposition of the testator's estate as if the testator had at the date of the codicil made a new will containing the same dispositions as the original will, but with the alterations made by the codicil." Applying this principal to the instant case, and conceding that the execution of the codicil to which reference is above made was a republication of the original will, and that by virtue of the codicil the effect of section 335A was made applicable to the will, we still cannot agree with the contention of the appellants, because of the last codicil, which is dated the 2nd day of August, 1932, a year after the death of Mrs. Weaver, and which necessarily must have the same legal effect, as to republication of the will, as

did the preceding codicil at the time of its execution. In other words, the third and final codicil, construed along the same line of reasoning—and rightly so, we think, in this case—as is the second codicil by the appellants, would give the same force and effect to the will as had the document been, upon that date, written *de novo*, and would then relate only to such first cousins as were living at that time. In this view, the will leaves the residuary estate to "my lawful heirs, being my first cousins," who at that time were two in number, Mrs. Scarborough and Miss McGonigall; and it would therefore seem unnecessary, for the purposes of this opinion, to differentiate between gifts to specially named devisees and legatees and gifts to a class.

But assuming that neither of the codicils had the effect of republishing the will, the same result would be reached, under the decisions of this court, for the reason that the original devise to "my lawful heirs, being my first cousins," was a gift to a class; and there being, at the death of Mrs. Weaver, members of the class who were entitled to take the gift to the class, no interest in the estate ever vested in her, and there was, therefore, no legacy to lapse. *Young v. Robinson*, 11 G. & J. 328, 341. In *Stahl v. Emery*, 147 Md. 123, 127 A. 760, 761, the testator, William Stahl, on March 26th, 1893, executed a will containing this clause: "I give, devise and bequeath all my property, real, personal and mixed, I may die possessed of, wheresoever and wherever the same may be, to my beloved wife, Mathilda Stahl, the same to be held by her during her natural life or as long as she remains my widow, so that she may use and enjoy the income and profits thereof so long as she may live, and from and immediately after her death or marriage, the said estate is to be equally divided among our children, share and share alike." At the time of the execution of the will, the testator had four children. Two of them married, and died, each leaving a child. The testator died in 1908, and the wife, the life tenant, died in 1924. At the time of the latter's death, the remaining two children of the

testator, and his two grandchildren, survived, and it was contended on behalf of the grandchildren that they were beneficiaries under the will. This court, speaking through Judge Offutt, said: "In 1 *Jarman on Wills* (6th Ed.) p. 232, it is said: 'A number of persons are popularly said to form a class when they can be designated by some general name, as "children," "grandchildren," "nephews"; but in legal language the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent, for its amount, upon the ultimate number of persons.' " And in dealing with the case then before it, said: "The question is reduced to this, did the testator by the expression 'our children' mean to describe his children living when the will was executed, or did he mean that term to embrace only such persons as would answer that description at some future time? If he intended by it to refer to his children living at the time the will was executed, then the devise was not to a class, but to individuals, because their number was known and certain, but if he intended it to apply to such of his children as might be alive at some future time, the devise was to a class, because in that event the number of persons who would take would remain uncertain until the time arrived at which the distribution was to be made."

There the general term "children" was used, while here the general term "first cousins" is used, and we can see no distinction as to the legal effect of these terms. If anything, it would seem reasonable that the construction would be more forcibly stressed in favor of all the "children" of a testator as distinguished from all his "first cousins." *Dawson v. Akers*, 127 Md. 585, 96 A. 806; *Boulden v. Dean*, 167 Md. 101, 173 A. 26; *Newlin v. Mercantile Trust Co.*, 161 Md. 622, 158 A. 51; 75 *A. L. R.*, 773, notes.

It is further contended that the children of Mrs. Weaver are entitled to share in the residuary estate by reason of the fact that while they are not strictly "first cousins" of the testator, yet that term, as used in a will, is broad enough to cover children of first cousins. Such relatives are correctly designated "first cousins once removed," and sometimes loosely referred to as "second cousins." It has been held that the designation "second cousins" covered these relatives, when used by a testator, but that was because he actually had no true second cousins. *In re Bonner,* 19 Ch. Div. 201, at page 205; 15 C. J. 1186. Speaking of the term "first cousin" as implying a child of an uncle or aunt, it was said in *Sanderson v. Bayley,* 4 Myl. & C. 56, 59, 18 Eng. Ch., 41 Reprint, 22: "And to no other does the appellation belong; for though the child of such first cousin is called a first cousin once removed, it is not known by the appellation of first cousin; and, in fact, it is a cousin in the second degree, though not called a second cousin, as being the second class of persons to whom the appellation of cousin is given." The term "first cousins," in the present case, cannot be held to include the children of first cousins.

From the conclusion we have reached, it is unnecessary to pass upon the exception to the ruling of the chancellor excluding from the evidence a letter from the testator to a son of Mrs. Weaver under date of August 8th, 1931.

*Decree affirmed; costs in this court to be paid from the funds in the hands of the executor.*