ALLERS, Personal Representative of the Estate of
George Rush Mullikin *v.* TITTSWORTH et al.,
Personal Representatives of the Estate
of Charles C. Croggon

[No. 18, September Term, 1973.]

*Decided October 2, 1973.*

678

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Bernard John Medairy, Jr.*, for appellant.

*Daniel B. Leonard*, with whom was *Seymour O'Brien* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Chapter 3, § 1 of the Laws of 1969, effective 1 January 1970, Maryland Code (1957, 1969 Repl. Vol.) Art. 93 recodified our law respecting Decedents' Estates. The sole question here is whether the execution of a codicil on 25 May 1970 brought a will executed on 24 March 1969 within the ambit of the recodification. Because we regard the memorandum opinion of the Circuit Court of Baltimore City (Ross, J.) which heard the case below, as an excellent exposition of the facts and of the applicable law, we shall adopt it, with a minimal amount of editing:

> The sole issue here is whether testator's codicil executed May 25, 1970 made his will, which was

executed March 24, 1969, subject to § 4-401 of Art. 93 which under Art. 93, § 12-102 (c), applies only to wills executed on or after January 1, 1970. The case was submitted on the pleadings and an agreed statement of facts.

The testator, Charles C. Croggon, died October 3, 1971. Because his wife had predeceased him, the testator's entire estate will pass under Item Seventh of his will, which contains pecuniary bequests aggregating $160,000.00, and leaves the residue of the estate to the Haskins & Sells Foundation. Subparagraph 2 of that Item contains the following legacy:

"2. To my nephew, George Rush Mullikin, presently residing in Baltimore, Maryland, the sum of Twenty-Five Thousand Dollars ($25,000)."

Subparagraphs 6 and 7 of the same Item read:

"6. I expressly provide that with respect to any of the above-named persons who shall predecease me, his or her bequest shall lapse and become a part of the balance of the rest, residue and remainder of my estate and shall be disposed of as set forth in the succeeding paragraph.

"7. The balance of the rest, residue and remainder of my estate after payment of all appropriate taxes and other expenses shall pass and be paid over and distributed absolutely and free of trust to the Haskins & Sells Foundation."

The operative provisions of the codicil are set forth in two items which read as follows:

"Item I

"It is my intention by this Codicil to provide a legacy to my good friend, William B. Tittsworth, and to that end I hereby add to and

amend Item Seventh of my Last Will and Testament executed on March 24, 1969 as follows:

'A. I hereby insert a new paragraph in said Item Seventh to follow immediately after paragraph 5 of said Item and to read as follows:

6. To my friend, William B. Tittsworth, who resides in Baltimore, Maryland, the sum of Twenty-Five Thousand Dollars ($25,000).

'B. I hereby amend by renumbering paragraph "6" of said Item Seventh and designate such paragraph of my said Will as paragraph "7".

'C. I hereby amend by renumbering paragraph "7" of said Item Seventh and designate such paragraph of my said Will as paragraph "8".'

"Item II

"In all other respects not inconsistent with this First Codicil, I hereby ratify, reaffirm and republish my said Last Will and Testament dated March 24, 1969."

George Rush Mullikin, who was a nephew and an heir at law of the testator, died October 28, 1971, twenty-five days after the testator, leaving a will under which he left his entire estate in trust for his grandson. Charles C. Croggon was a widower who had had no children.

Art. 93, § 4-401 reads as follows:

"A legatee, other than his spouse, who fails to survive the testator by 30 full days is deemed to have predeceased the testator, unless the will of the decedent expressly creates a presumption that the legatee is deemed to survive the testator or requires that the legatee survive the testator for any stated

period in order to take under the will and the legatee survives for the stated period."

Section 12-101 of Art. 93 provides that the effective date of the Article is January 1, 1970 and § 12-102 provides:

"Unless otherwise specifically provided in another section of another subtitle of this article, the provisions of this article shall apply as follows:

\* \* \*

(c) Subtitle IV shall apply to all wills [1] executed on or after the effective date of this article, except that § 4-105 shall apply to any act or acts of revocation occurring on or after January 1, 1970.

\* \* \*"

The following is the comment of the Governor's Commission to Review and Revise the Testamentary Law of Maryland (the Henderson Commission) respecting § 12-102 (c), which was a part of the Commission's report and accompanied the draft bill submitted to the Legislature:

"The operation of subsection (c) can be illustrated by the following example: A executes a will on February 1, 1969. He then executes a Codicil on February 1, 1970, after the effective date of the statute. He dies on February 2, 1970. Section 12-102 (a) provides that with respect to most of the proposed statute, since the decedent died after January 1, 1970, the provisions referred to in subsection (a) would be applicable. However, with respect to the execution of the will, where the rules of

---

[1]. Code, Art. 93, § 1-101 (s) defines "will" as meaning "any written instrument, including a codicil" executed in proper form.

construction may have differed after the effective date of the statute, the Commission has provided that in subparagraph (c) of Section 12-102, Subtitle IV shall apply only to wills executed on or after the effective date of the Article. Since a Codicil is ordinarily deemed to republish a will, it was the Commission's intent that the republication of the will would make the entire will subject to Subtitle IV of the statute. This is true even though the Codicil does not expressly republish the will. See Section 61 of Miller, The Construction of Wills in Maryland (1927), where the learned author stated that a codicil, whether expressly so stating or not, will automatically republish a will, unless the contrary intent is expressly stated in the codicil. In construing the effective date provision of this statute, therefore, it would not make any difference whether the codicil contained express language of republication; the codicil would automatically be deemed to be a reexecution of the will, unless the codicil expressly stated to the contrary. (See, however, Section 4-105 (a) for a provision of the statute which does require express language of republication in another context)."

Neither § 4-401 nor § 12-102 (c) was amended in the legislative process. Both were enacted in the language submitted by the Henderson Commission. Laws of 1969, Ch. 3, § 1.

The principal contention of Mr. Allers, the personal representative of the estate of George Rush Mullikin, who filed a bill of complaint for the construction of the Croggon will, is that § 4-401 does not apply in this case because the will was executed prior to January 1, 1970 and the doctrine or rule of republication by codicil is not absolute but is subject to the limitation that the intention of

the testator must not be defeated by its application. Allers maintains that the clearly expressed intention of the testator was to bequeath $25,000 to his nephew, that to apply the 30 day survival rule to that bequest would defeat the intention; and that therefore, the doctrine of republication is inapplicable. This contention is not sound.

It is clear from the comment quoted above that the Henderson Commission intended § 4-401 to apply to wills executed before January 1, 1970 where codicils were executed after that date. This comment was before the Legislature when it enacted Article 93 and undoubtedly the Legislature understood that such would be the effect of the enactment of the language submitted by the Commission with the comment. Plaintiff's argument that the court may not consider "reports of the intention of the draftsmen" is misdirected. This language was taken from the opinion of the Court of Appeals in *Liquor Stores Ass'n v. Commissioners*, 171 Md. 426, 430, 189 A. 209, 210 (1937). The "reports of the intention of the draftsmen" which the Court of Appeals excluded from consideration in that case were not reports of a revision commission but were statements made by the assistant attorney general who argued the case at trial to the effect that he had "worked with Governor Ritchie in the drafting of the act" and he was aware of the importance which Governor Ritchie attached to the matter there in question. See brief of appellee in that case, p. 8. The practice of considering revision commission reports in searching for legislative intent is too well established to be open to question. See Meyer, *Legislative History and Maryland Statutory Construction*, 6 Md. L. Rev. 311, 314-15 (1942), citing *Strauss v. Heiss*, 48 Md. 292, 296 (1878) and *Public Service Commission v. Sun Cab Co.*, 160 Md. 476, *[West v. Sun Cab Co.]* 154 A. 100 (1931).

Furthermore, the comment sets forth accurately the Maryland law on the subject. Miller, *Construction of Wills*, § 61 (1927); *Colley v. Britton*, 210 Md. 237, 123 A. 2d 296 (1956). Thus, the result in this case would be the same even if the comment did not exist, particularly in view of the express republication in Item II of the codicil. The comment merely fortifies the application of the general rule that the Legislature is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law.

The only recognized exception to the rule of republication is where its application defeats the intent of the testator. Here, application of the 30-day survival requirement serves to carry out the testator's clear intention, not to defeat it. It is obvious from the will and codicil, read together as a whole, that it was the intent of the testator that the bequests to individuals were for them alone and to be enjoyed by them only if they survived him. If a legatee did not survive to enjoy the bequest, it was to lapse and go to the residuary legatee. One who dies so soon after the testator that the bequest cannot be distributed to him is unable to receive and enjoy the bequest in a manner contemplated by the testator. This is undoubtedly one of the reasons for the Legislature's adoption of § 4-401. The cases relied on by Mr. Allers, *Estate of McCauley*, 138 Cal. 432, 71 P. 512 (1903) and *Estate of Pence*, 117 Cal. App. 323, 4 P. 2d 202 (1931), involved factual situations in which it was clear that application of the rule would defeat the testator's intention, and are therefore distinguishable.

Mr. Allers attempts to come within one of the exceptions in § 4-401 by arguing that the language of the codicil "expressly creates a presumption that the legatee is deemed to survive the testator." This

argument is to the effect that since the expressed intention of executing the codicil was "to provide a legacy to my good friend, William B. Tittsworth" and the codicil was executed "to that end," the gift or creation of the legacy was the full extent of the effect intended for the codicil. This argument overlooks completely Item II of the codicil in which the will is expressly republished except to the extent of inconsistency. Subjecting the entire will to § 4-401 is not in any way inconsistent with the codicil. The phrase "to that end" was not used by the testator to express limitation, as argued, but rather as an expression of purpose.

The presumption against disinheritance of an heir or next of kin is merely an aid to construction. The meaning of the language used in the will and codicil and the applicability of § 4-401 are too clear to leave room for the application of this presumption in this case.

Pertinent here is strong dictum expressed in *Weaver v. McGonigall,* 170 Md. 212, *[Weaver v. Liberty Trust Co.]* 183 A. 544 (1936). In *Weaver,* the testator executed a will on 1 April 1926, and a first codicil thereto the next day. An anti-lapse statute was subsequently enacted by the Legislature, applicable to all wills executed after 1 July 1929. A second codicil to the 1926 will was then executed on 15 January 1931, and a third on 2 August 1932. The testator died on 14 February 1934. Thereafter an action was instituted to construe the residuary clause of the will. Application of the doctrine of republication to the second and third codicils led the Court to conclude that the statute merited consideration in construing the entire will, *Weaver v. McGonigall, supra,* 170 Md. at 218-19, 183 A. at 547. The result reached in the instant case is entirely consistent with the *Weaver* rationale. *Compare Weaver with Gutman v. Safe Deposit & Trust Co.,* 198 Md. 39, 81 A. 2d 207 (1951), where a statute passed in 1947 was held inapplicable to a will executed in 1922 and probated in 1923.

686

Mr. Allers argues quite persuasively that the result reached below may well not have been that intended by Mr. Croggon. Even if we assume the validity of this contention, the simple fact is that Mr. Croggon is presumed to have been aware that the law had been changed at the time he executed the codicil, *Vance v. Johnson*, 171 Md. 435, 441, 188 A. 805, 807 (1937). Every man is presumed to know the law, and that the Legislature may enact, amend, or repeal a statute, *Bartlett v. Ligon*, 135 Md. 620, 626-27, 109 A. 473, 476 (1920); *Kearney v. Sascer*, 37 Md. 264, 279 (1873). *See also Hospelhorn v. Poe*, 174 Md. 242, 266, 198 A. 582, 594 (1938). Because we think that the result was that mandated by Article 93, we shall affirm the decree of the lower court which dismissed the bill of complaint.

*Decree affirmed, costs to be paid by appellant.*